565 So.2d 1117 (1990)
MISSISSIPPI JUDICIAL PERFORMANCE COMMISSION
v.
George W. WALKER, Justice Court Judge.
No. 90-CC-0026.
Supreme Court of Mississippi.
June 27, 1990.
*1118 Luther T. Brantley, III, Jackson, for petitioner.
Isaac K. Byrd, Jr., Byrd & Associates, Jackson, for respondent.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:

I.
On January 26, 1989, Julian Ferguson[1] (Julian) appeared before Hinds County Justice Court Judge George W. Walker (Judge Walker) at the Hinds County Justice Court Building to prosecute his Motion against Constable George Thomas for failure to execute a judgment. At the close of evidence, Judge Walker dismissed the Motion and Julian made the following statement: "Your honor, you do know that I have the right to appeal this case before the Judicial Performance Committee." Judge Walker promptly found Julian in contempt of court, had him arrested and placed in jail, without bond, for 24 hours.
Pursuant to a complaint filed by Julian, a formal complaint was lodged against Judge Walker June 13, 1989. He was charged with abuse of the contempt powers, violations of Canons 1, 2 A, 2 B, 3 A(1), 3 A(2), 3 A(3) and 3 A(4) of the Code of Judicial Conduct of Mississippi Judges, and violation of Section 177A of the Mississippi Constitution of 1890.
Judge Walker answered, admitted the fact of the contempt citation, but stated that such a finding on his part was justified because of Julian's "complete and utter contempt for the Court and its process" as a result of his statement "you niggers stick together"; Judge Walker stated he did not recall the statement regarding the right to appeal. Further, Judge Walker stated that "even assuming the validity of plaintiff's allegation" his actions did not violate any section of the Code of Judicial Conduct or the Mississippi Constitution because "such an announcement of a right to appeal when made to the judge at the bench, in open court, in a manner or demeanor such as that assumed by plaintiff which was calculated to intimidate, embarrass or castigate the Court, and serving no other purpose in itself, constitutes contempt of court."
A formal hearing into the matter was conducted before a Factfinder duly appointed by the Commission. The Factfinder found that Judge Walker had abused his contempt powers. Judge Walker filed Objections to the findings and recommendations of the Fact Finder.
The Commission filed its Findings of Fact and Recommendation, a copy of which is attached as Appendix "A". The Commission found, by clear and convincing evidence, that Judge Walker's actions violated Canons 1, 2 A, 2 B, 3 A(1), 3 A(2), 3 A(3) and 3 A(4) of the Code of Judicial Conduct of Mississippi Judges and constituted willful misconduct in office prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890, as amended, as defined by the Mississippi Supreme Court. The Commission unanimously recommended public reprimand.
We find that Judge Walker's actions constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Art. 6 § 177A of the Mississippi Constitution of 1890, and impose the sanction of public reprimand.

*1119 II.

A.
This Court acts as the factfinder in judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, and the recommendations of the Mississippi Judicial Performance Commission. Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036 (Miss. 1990); In re Collins, 524 So.2d 553 (Miss. 1987); In re Inquiry Concerning Garner, 466 So.2d 884 (Miss. 1985); In re Brown, 458 So.2d 681 (Miss. 1984). However, this Court is not bound by the recommendations of the Commission and may impose additional sanctions. Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036 (Miss. 1990); In re Collins, 524 So.2d 553 (Miss. 1987).
This case concerns a serious allegation: abuse of the contempt powers. For that reason, a full recitation of the facts is warranted.

B.
Julian Ferguson is the owner of an advertising specialty business known as Ferguson Company. In November of 1986, Ferguson Company sold calendars for $281.79 to Billy Allen, d/b/a E & M Florist. On April 16, 1987, after payment was not forthcoming, Julian filed suit against E & M Florist and Billy Allen in the Justice Court of Hinds County, Mississippi. A default judgment was entered against E & M Florist April 30, 1987; Judge Walker granted the default.
Julian filed a garnishment against Billy Allen September 14, 1987. The garnishment was unsuccessful. On May 31, 1988, Julian filed an execution for 10 candelabra against E & M Florist.
The execution was not completed, and on October 31, 1988, Julian filed a Motion against Constable Thomas for failure to execute and return. Thereafter, Constable Thomas delivered two (2) candelabra in the Justice Court. Constable Thomas represented that the items were two (2) spiral candelabra worth $440.00. Julian had the candelabra appraised at United Wholesale Florist, who reported that the items were not spiral candelabra and were not worth $440.00. Based on this information, Julian filed a motion for deficient execution against Constable Thomas for eight (8) additional candelabras with the Hinds County Justice Court on November 16, 1988.
Julian's Motion against Constable Thomas was heard January 26, 1989, by Judge Walker at the North State Street location of the Hinds County Justice Court. The hearing lasted approximately two (2) hours. The following is an account of the events occurring during the hearing in question, taken from the testimony of four (4) witnesses offered by the Commission and the testimony of Judge Walker.
The January 16, 1989, hearing began approximately 9:30 a.m. In addition to Judge Walker, the Plaintiff, Julian Ferguson, and the Defendant, Constable Thomas, the following persons were also present: Shelva King, Deputy Clerk of the Hinds County Justice Court, who sat next to Judge Walker; Joe Ferguson, Julian's brother, who sat at the back of the courtroom with Billy Knight, Julian's cousin; and Constables John Brown and Dan Jordan. Attorney John Gregg was in and out of the courtroom for the final hour of the hearing and was present when the events giving rise to this case occurred. Neither Julian nor Constable Thomas were represented by counsel, nor did they offer testimony other than their own.
Julian testified uninterrupted. When Constable Thomas offered his testimony, he was interrupted several times by Julian. Julian also argued with Judge Walker on several occasions, for which he was reprimanded and threatened with contempt of court on one or more occasions. The arguments by Julian concerned Judge Walker's inquiries into the facts of the underlying default judgment: Judge Walker did not remember granting the default judgment and Julian maintained that the underlying facts were irrelevant to the case before the court. There was contradictory testimony regarding whether Julian was loud during the hearing.
*1120 According to Julian, at the close of testimony Judge Walker took a 5-10 minute recess and left the courtroom. Judge Walker denies taking a recess.
Judge Walker rendered his decision in favor of Constable Thomas and dismissed Julian's motion. Immediately after the pronouncement of the decision, Julian, admittedly irritated with the ruling, made the following remark: "Your Honor, you know I do have the right to appeal this to the Judicial Performance Commission." Witnesses for the Commission testified that they heard this statement and that Julian was standing at the witness table when the statement was made, a distance of 5 1/2 to 7 feet away from Judge Walker. Julian was immediately found in contempt of court, handcuffed and taken to jail for 24 hours.
Judge Walker denied hearing the statement regarding the right to appeal. He testified that Julian was standing at the bench and the two men were face-to-face and eye-to-eye when the ruling was announced. He testified that after the ruling Julian leaned over the bench and, in a very low voice, said, "You niggers stick together." Julian denied making this racial statement; no other witness heard the racial statement or saw Julian lean over the bench.
Judge Walker testified that he found Julian in contempt on the basis of the racial slur. He also testified that he would have found Julian in contempt absent the racial remark because he, Judge Walker, felt that Julian was picking on him and "messing" with his mentality as a judge, trying to make him look bad, trying to take advantage of him and/or trying to show him up. Judge Walker testified that of the 15,000 to 17,000 cases he had heard in his 10 years as a Justice Court Judge, he had never found a litigant in contempt for announcing their right to appeal because, unlike Julian, they were nice in stating their rights.
After Julian was taken to jail, Judge Walker called Julian's brother, Joe Ferguson, into chambers. The two men talked for about five minutes. During this conversation, Joe asked if an apology would be satisfactory, to which Judge Walker replied no, because Julian had been disrespectful to the court. Judge Walker testified that he did not mention the racial slur to Joe during their conversation, nor did he tell his court clerk about the remark.
While in chambers, the two men also discussed the case. According to Joe, Judge Walker said he was going to change his ruling based on their conversation, reconvened court with Constable Thomas present, announced his change of decision and said that a written opinion would be forthcoming within five (5) days. Although no such opinion appears in the record, Julian collected the balance owed on the default of March 7, 1989.
Julian filed a complaint with the Commission based solely on his being placed in jail. That complaint resulted in the Formal Complaint hearing before the Factfinder and recommendation of the Commission to this Court for a public reprimand.

III.
Judge Walker is charged with violation of Article 6, § 177A, Mississippi Constitution (1890), which states, in part:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: . .. (b) willful misconduct in office; . . (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute ...
In addition to violation of Art. 6 § 177A, Judge Walker is charged with violation of Canons 1, 2 A, 2 B, 3 A(1), 3 A(2), 3 A(3) and 3 A(4). Those Canons read:
CANON 1
A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be *1121 preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Commentary
Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
(2) A judge should maintain order and decorum in proceedings before him.
(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.
Commentary
The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and business-like while being patient and deliberate.
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, either initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

IV.
There are three (3) undisputed facts in this case: (1) Judge Walker had the authority to sentence anyone found to be in contempt of court to jail for 24 hours (See § 9-11-15); (2) Judge Walker found Julian in contempt and sentenced him to 24 hours in jail without bond; and (3) Julian spent 24 hours in jail. The question presented is whether, under the facts of this case, the actions of Judge Walker constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
In the case of In re [Lloyd] Anderson, 412 So.2d 743 (Miss. 1982) this Court adopted the definitions of "willful misconduct and conduct prejudicial to the administration *1122 of justice which bring the judicial office into disrepute" promulgated by the North Carolina Supreme Court in the case of In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977):

Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercises of his authority constitutes bad faith....
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. (emphasis theirs).
412 So.2d at 745. See also In re Quick, 553 So.2d 522 (Miss. 1989); Miss Jud. Performance Com'n v. Coleman, 553 So.2d 513 (Miss. 1989); In re Collins, 524 So.2d 553 (Miss. 1987); In re Stewart, 490 So.2d 882 (Miss. 1986); In re Inquiry Concerning Garner, 466 So.2d 884 (Miss. 1985); In re [William] Anderson, 451 So.2d 232 (Miss. 1984). "[T]his Court can generally recognize examples of such conduct when presented before the Court." In re Quick, 553 So.2d 522, 525 (Miss. 1989).
This Court addressed, at length, what actions constituted "conduct prejudicial to the administration of justice which brings the judicial office into disrepute" in the case of In re Inquiry Concerning Baker, 535 So.2d 47 (Miss. 1988):
There is no simple, black-letter definition of conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Maryland Supreme Court, in In re Diener and Broccolino, 268 Md. 659, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974) said:
Precisely what "conduct prejudicial to the proper administration of justice" is or may be, in any or all circumstances, we shall not undertake to say. Indeed, a comprehensive, universally applicable definition may never evolve but it is unlikely we shall ever have much trouble recognizing and identifying such conduct whenever the constituent facts are presented.
304 A.2d at 594.
The Nebraska Supreme Court, in defining language identical to that of our § 177A, went into more depth and detailing the case of In re Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984). The Nebraska Court found that:
Conduct which falls short of reaffirming one's fitness for the high responsibilities of judicial office constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute. [citation omitted] It includes conduct which would justify a reasonable man in believing that a result achieved by a judge was achieved because of his position and prestige, [citation omitted] and conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office. [citation omitted] It depends not so much on the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers. [citation omitted] The "judicial office" refers not to the judge as an individual but, rather, to the judiciary. [citation omitted] Conduct prejudicial to the administration of justice that brings the judicial office into disrepute is less grave than willful misconduct in office. [citations omitted].

*1123 351 N.W.2d at 695-96.
This Court in interpreting § 177A(e) in In re (Lloyd) Anderson, 412 So.2d 743 (Miss. 1982) as cited in In re (William) Anderson, 451 So.2d 232 (Miss. 1984), has stated that:
[A] judge may also, through negligence or ignorance, not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.
451 So.2d at 234.
535 So.2d at 50-51.
We have made a diligent search of our case law and found no Mississippi cases directly on point. See Appendix "B". However, the facts of the California case, Ryan v. Com'n on Judicial Performance, 45 Cal.3d 518, 247 Cal. Rptr. 378, 754 P.2d 724 (1988), are almost identical to the facts sub judice, and are most helpful in the decision we reach today.
In the case of Ryan v. Com'n on Judicial Performance, 45 Cal.3d 518, 247 Cal. Rptr. 378, 754 P.2d 724 (Cal. 1988), Judge Ryan was removed from office for four (4) acts of wilful misconduct and fourteen (14) acts of prejudicial conduct. Of the four (4) acts of wilful misconduct, two (2) involved abuse of the contempt power.
In the first instance, Starks, an attorney, asked when the next judicial election would be after Judge Ryan declined his offer of assistance to a defendant appearing before the judge. Thereafter, Starks got into a heated discussion with Judge Ryan's court clerk over the remark. All of the discussions occurred outside the presence of the judge. When Judge Ryan learned of the statements, he held Starks in contempt and "summarily sentenced him to a $200 fine or three days in jail."
In holding that the actions of Judge Ryan in the Starks matter constituted wilful misconduct, the Supreme Court of California said:
Those who accept judicial office must expect and endure such criticism. As one court aptly stated, "the judge must be long of fuse and somewhat thick of skin." (DeGeorge v. Superior Court (1974) 40 Cal. App.3d 305, 312, 114 Cal. Rptr. 860.) Moreover, Starks's heated discussion with [the court clerk] did not rise to the level of contemptuous behavior. Starks's conduct did not interfere with court proceedings, nor did it lower esteem for the judiciary.
247 Cal. Rptr. at 386, 754 P.2d at 732.
The second incident involving use and abuse of contempt power is directly on point with the case sub judice. That portion of the opinion reads:
2. The Hiter Matter.
[8] Maxine Hiter appeared as a defendant in a civil matter before Judge Ryan. The judge ordered Hiter to pay a judgment. Hiter was upset and protested the decision, but later apologized for her outburst. As she was leaving the courtroom she remarked, "you can't get blood out of a turnip." Judge Ryan heard the comment and ordered his bailiff to take her into custody for contempt. The judge summarily sentenced her to jail for 24 hours without notice or an opportunity to be heard. Judge Ryan then relied on his bailiff for advice as to the code section to cite in his order. The order improperly cited Penal Code section 166.1 and did not include a summary of facts constituting contempt. Hiter served 42 hours in the county jail.
This is another inexcusable example of Judge Ryan's abuse of the contempt power. Once again, the judge completely ignored contempt procedures. He failed to return Hiter to court to inform her that she was in contempt. Moreover, he never gave her a chance to respond to the contempt order. Judge Ryan also committed unjudicial conduct in relying on his bailiff for the legal citations to put in his order.
As we stated in the Starks matter, ante, wilful ignorance of contempt procedures by an experienced judge constitutes bad faith. Although the masters concluded that the judge's conduct was *1124 merely prejudicial, we agree with the Commission that Judge Ryan committed wilful misconduct in this matter.
247 Cal. Rptr. at 386, 754 P.2d at 732.
The hearing sub judice before Judge Walker had concluded and everyone was leaving the courtroom when Julian made the statement regarding his right to appeal for which he was held in contempt and jailed. It is undisputed that the statement regarding the right to appeal was actually made. Assuming for argument that the racial remark was actually made, such a statement, while admittedly reprehensible, was a personal attack on Judge Walker and not directed at the court as defined in our case law. See Culpepper v. State, 516 So.2d 485, 486, 487 (Miss. 1987) and cases cited therein. Judge Walker's response was deplorable, for as this Court has stated
There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office of the justice court judge. See In re Garner, 466 So.2d 884, 887 (Miss. 1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the legal process. [In re] Bailey, 541 So.2d [1036] at 1049 [(Miss. 1989)].
Miss. Jud. Performance Com'n v. Thomas, 549 So.2d 962, 965-66 (Miss. 1989) (quoting In re Bailey, 541 So.2d 1036 (Miss. 1989)).
Judge Walker correctly states that a judge has the authority, indeed, the duty, to address direct attacks on the court. See Varvaris v. State, 512 So.2d 886 (Miss. 1987); Cook v. State, 483 So.2d 371 (Miss. 1986). However, a prerequisite to the response requires that the direct attack be made "against the legal institution, the court, not the judge individually." Culpepper v. State, 516 So.2d 485, 486, 487 (Miss. 1987) and cases cited therein. Judge Walker testified that he found Julian in contempt because he felt Julian was picking on him, messing with his mentality as a judge, trying to make him look bad, trying to take advantage of him and/or trying to show him up. We find that Judge Walker found Julian in contempt for what he perceived as a direct attack on him, personally, and therefore, such action was in direct violation of our case law and the Code of Judicial Conduct of Mississippi Judges and constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Having found that Judge Walker's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, we now proceed to decide an appropriate sanction.

V.
The imposition of sanctions is a matter left solely to the discretion of this Court. In re Quick, 553 So.2d 522, 527 (Miss. 1989); In re Collins, 524 So.2d 553, 556 (Miss. 1987); In re Inquiry Concerning Garner, 466 So.2d 884, 885 (Miss. 1985); In re [William] Anderson, 451 So.2d 232, 234 (Miss. 1984); In re [Lloyd] Anderson, 412 So.2d 743, 746 (Miss. 1982). This Court gives great deference to the recommendations of the Commission, but is not bound thereby. Miss. Jud. Performance Com'n v. Peyton, 555 So.2d 1036 (Miss. 1990); In re Collins, 524 So.2d 553 (Miss. 1987); In re Inquiry Concerning Garner, 466 So.2d 884, 885 (Miss. 1985); In re [William] Anderson, 451 So.2d 232, 234 (Miss. 1984); In re [Lloyd] Anderson, 412 So.2d 743, 746 (Miss. 1982). The sanctions available to this Court are: (1) removal from office; (2) suspension from office; (3) fine; and (4) public censure or reprimand. Art. 6 § 177A, Miss.Const. (1890). The sanction imposed should be consistent with other like cases and "ought fit the offense." In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989).
*1125 This Court addressed the issue of when a public reprimand is warranted in In re Inquiry Concerning Baker, 535 So.2d 47 (Miss. 1988):
A survey of recent Mississippi judicial disciplinary cases (see Appendix) [Updated as Appendix "B"] reveals that the sanction of public reprimand is imposed for more than one offense. Only one case, In re William Anderson, involved a public reprimand for only one type of offense. Even in this case, Judge Anderson failed on three occasions to issue writs of garnishment after receiving filing fees to do so.
We find no case in which one isolated instance of impropriety warranted public censure.
535 So.2d at 53.
Baker involved a recommendation of public reprimand because the judge had telephoned a litigant in a pending action to ask for political support. This Court declined to issue a public reprimand, finding a private reprimand was the appropriate sanction under the facts as presented and "the isolated nature of the offense" in light of the mitigating factors. Id. at 54.
In determining whether a reprimand should be public, this Court considers mitigating factors which weigh in favor of confidential, private action. Those factors, taken from In re Inquiry Concerning Baker, 535 So.2d 47, 54 (Miss. 1988), along with the evidence from the case sub judice, are:

(1) The length and character of the judge's public service.
The record indicates that Judge Walker has served as a Justice Court Judge since 1979.

(2) Positive contributions made by the judge to the courts and the community.
The record contains no information on this factor.

(3) The lack of prior judicial precedent on the incident in issue.
As previously indicated, we found no Mississippi cases directly on point. However, the case of In re Bailey, infra, is closely analogous and weighs in favor of public reprimand.

(4) Commitment to fairness and innovative procedural form on the part of the judge.
The record contains no information on this factor.

(5) The magnitude of the offense.
Jailing a litigant for 24 hours without bond based upon verbal assertions of the right to appeal, or personal attacks upon the judge, after the close of court, is an "inexcusable example of ... abuse of the contempt power" weighing heavily in favor of public reprimand.

(6) The number of persons affected.
Julian Ferguson was the only person jailed. However, the incident was witnessed by four (4) officers of the Court and two (2) citizens who were not officers of the Court.

(7) Whether "moral turpitude" was involved.
Moral turpitude was not involved in the case before this Court.
The case sub judice involves only one offense and apparently the first offense of Judge Walker. The only Mississippi case found wherein a public reprimand was issued for a first offense is In re Bailey, 541 So.2d 1036 (Miss. 1989). See Appendix "B". The first offense in Bailey consisted of two (2) offenses: (1) jailing of a litigant on grounds of contempt for failure to pay a civil debt contrary of Miss. Const. Art. 3, § 30 (1890) and (2) interference with another judge's case by "entering an order purporting to grant relief from a temporary protective order previously entered by another judge." Id. at 1039. Upon recommendation of the Commission, this Court issued a public reprimand to give Judge Bailey a second chance and directed "that *1126 he display the temperament and impartiality and learning and competence that are synonymous with the idea of the judge in a society that accepts and is governed by the rule of law." Id. at 1040. Judge Bailey was not removed from office because "this Court has not yet removed a judge from office for a first offense where the judge has not profited in some way from his misconduct, although we certainly have authority to do so." Id. at 1040.
Based on the foregoing, we affirm the unanimous action of the Judicial Performance Commission. We therefore find, and so order, that Judge Walker should be publicly reprimanded.
AFFIRMED. SEPARATE ORDER FOR PUBLIC REPRIMAND ENTERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., not participating.

APPENDIX A

Before the Mississippi Commission on Judicial Performance Inquiry 
Concerning a Judge No. 89-032

COMMISSION FINDINGS OF FACT AND RECOMMENDATION

INITIATION OF PROCEEDINGS
On June 13, 1989, the Commission filed a Formal Complaint charging the Respondent, George W. Walker, Justice Court Judge, District 2, Hinds County, Mississippi, with judicial misconduct constituting a violation of Section 177A, Mississippi Constitution of 1890, as amended.
On July 14, 1989, the Respondent filed an Answer to the Formal Complaint, admitting parts of the Formal Complaint, denying parts, and denying any judicial misconduct.

HEARING
On October 25, 1989, this cause came on for formal hearing before a fact finder duly designated by the Commission pursuant to Rule 8C of the Rules of the Commission on Judicial Performance. The Commission was represented by Luther T. Brantley, III of Jackson. The Respondent was present and was represented by Isaac K. Byrd, Jr. of Jackson.

FINDINGS OF FACT
Based upon the pleadings and evidence presented at the hearing in this cause, the Commission adopts and accepts the recommendation of fact finder and finds the following by clear and convincing evidence, to-wit:
On October 25, 1989, a hearing was held in Hinds County, Mississippi, pursuant to a complaint filed before the Mississippi Commission on Judicial Performance against George W. Walker, Justice Court Judge for District 2, Hinds County, Mississippi. The complaint alleges that the said justice court judge abused the Contempt powers of the Justice Court System by finding the affiant Julian Fergerson in Contempt and incarcerated him for twenty four hours for advising the said justice court judge that he, the affiant had the rights to appeal this case before the Judicial Performance Committee. It also alleged that the aforesaid conduct, constituted willful misconduct in office and conduct prejudicial to the administration of justice.
The facts as presented at the hearing on October 25, 1989, are as follows:

I.
Pursuant to a claim filed by the affiant, Julian Fergerson, against Constable Thomas for failure to execute on a judgment, a hearing was conducted in Justice Court of Hinds County before Judge Walker on January 26, 1989. At the said hearing, neither the affiant, Julian Fergerson, nor the respondent in that case, Constable Thomas, were represented by legal counsel. The facts which brought that matter to court on January 26, 1989, are irrelevant to the issues presently before this Commission.
According to the testimony presented before this Fact Finder, the affiant, Julian Fergerson, was given an opportunity on January 26, 1989, to present his case before *1127 Judge Walker. That at the conclusion of his case, Judge Walker allowed the Respondent, Constable Thomas, to present his case. That while Constable Thomas was presenting his case, he was interrupted on several occasions by the affiant, Julian Fergerson, and Judge Walker warned Mr. Fergerson on at least two occasions that if he did not allow Mr. Thomas to present his case, he would be found in Contempt. During the course of the hearing, however, Judge Walker never exercised his right to find affiant in Contempt, although in my opinion, Judge Walker would have been justified in so finding the affiant in Contempt during the hearing.
At the conclusion of the case, Judge Walker found in favor of Constable Thomas. The facts and circumstances that happened after this ruling is what brought this matter before the Commission. The affiant, Julian Fergerson, testified that after Judge Walker had ruled in favor of Constable Thomas, as he, the affiant was gathering his evidence together, he made a comment to the judge that "you know I have a right to appeal this case to the Commission on Judicial Performance." Four other persons testified at the hearing on October 25, 1989, that they heard the affiant state this to Judge Walker, one of the witnesses was the affiant's brother, another was a relative of the affiant, a third witness was an attorney who had no connections with the affiant, who just happened to be in the courtroom that day, and the fourth witness was the deputy court clerk who was in the courtroom throughout the hearing. Judge Walker's testimony was that after he had ruled in favor of the Respondent, the affiant, Julian Fergerson, leaned over his bench and whispered to him "you niggers stick together." Judge Walker does not recall the affiant mentioning anything about appealing the case to the Commission on Judicial Performance. None of the other witnesses who testified, heard Mr. Fergerson make any racial remarks. The overwhelming weight of the evidence is that the affiant, Julian Fergerson, advised Judge Walker that he had the right to appeal the case before the Commission on Judicial Performance. That because of that statement, Judge Walker found the affiant in Contempt of Court and ordered him incarcerated for twenty four hours.
The issue is whether the affiant's statement that he would appeal the case to the Commission on Judicial Performance was of such a nature to cause affiant to be found in Contempt for making such statement. Judge Walker's testimony was that he found the affiant in Contempt because of the racial remark made by the affiant. Other than Judge Walker's testimony no one else that appeared at the said hearing testified that they heard affiant make such statement. Judge Walker further testified that he has never found a person in Contempt because they threaten to appeal. It is this writer's opinion that Judge Walker was not justified in his actions in finding affiant in Contempt for threatening to appeal Judge Walker's decision to the Commission on Judicial Performance.
It is therefore my recommended opinion that Judge Walker abused the Contempt powers of the Justice Court System by finding the affiant, Julian Fergerson, in contempt for threatening to appeal Judge Walker's decision to the Commission on Judicial Performance.

CONCLUSIONS OF LAW
Having adopted and accepted the recommendations of Fact Finder, the Commission finds by clear and convincing evidence that the conduct of the Respondent constitutes a violation of Canons 1, 2A, 2B, 3A(1), 3A(2), 3A(3) and 3A(4) of the Code of Judicial Conduct of Mississippi Judges to-wit:
CANON 1
A Judge Should Uphold the Integrity and Independence of the Judiciary.
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code *1128 should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and Diligently.
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
(2) A judge should maintain order and decorum in proceedings before him.
(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and of his staff, court officials, and others subject to his direction and control.
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
The Commission finds by clear and convincing evidence that the Respondent's conduct constitutes willful misconduct in office land conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890, as amended, as defined by the Mississippi Supreme Court.

RECOMMENDATION
The Commission therefore finds by clear and convincing evidence that the conduct of the Respondent, Justice Court Judge George W. Walker constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute as set forth in Section 177A of the Mississippi Constitution of 1890, as amended. The Commission therefore by a unanimous vote recommends to the Mississippi Supreme Court that the Respondent, George W. Walker, be publicly reprimanded, pursuant to Section 177A of the Mississippi Constitution.
This the 22nd day of December, 1989.
 Respectfully submitted,
 MISSISSIPPI COMMISSION ON
 JUDICIAL PERFORMANCE
 /s/ Kenneth B. Robertson,
 Kenneth B. Robertson,
 Chairman

APPENDIX B

SYNOPSIS OF MISSISSIPPI JUDICIAL MISCONDUCT CASES
This list was originally complied by the Research Assistant of Justice Griffin and attached as an Appendix in the case of In *1129 re Inquiry Concerning Baker, 535 So.2d 47 (Miss. 1988). The list was updated by Jim Hood, Research Assistant to Justice Hawkins, in his Memorandum for the case Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036 (Miss. 1990). This writer has further updated the list.
1. Miss.Jud. Performance Com'n v. Peyton, 555 So.2d 1036 (Miss. 1990)
Sanction: Public Reprimand
Violation of Canon 7A(1)(a), (b), (c); (2), (4)
Offense: Remaining active in political party following election to bench
Sanction: Private Reprimand
Offense: 1) Seeking assistance for a person charged with a traffic violation in another court shortly after elected to first term
2. In re Quick, 553 So.2d 522 (Miss. 1989)
Sanction: Removal
Violation of Canons 1, 2A, 2B, 3A(1), 3B(1); violation of § 177A, willful misconduct in office and conduct which brings the judicial office into disrepute
Offense: 1) Failure to report 25 adjudications of DUI offenses and 552 other routine traffic offenses with the Department of Public Safety pursuant to § 63-11-37
3. Miss. Jud. Performance Com'n v. Coleman, 553 So.2d 513 (Miss. 1989)
Sanction: Removal
Violation of Canons 1, 2A, 2B, 3A(1), 3B(1); violation of § 177A, willful misconduct in office and conduct which brings the judicial office into disrepute
Offense: 1) Conversion of criminal fines and fees to own use
2) Failure to properly account for said fines
4. Miss. Jud. Performance Com'n v. Thomas, 549 So.2d 962 (Miss. 1989)
Sanction: Suspension from Office
Violation of Canons 1, 2A, 2B, 3A(1), 3C(1)(a), 3C(1)(c), 3(1)(d)(i); violation of § 177A, conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Holding office of Mayor while also holding office of municipal court judge
2) Felony conviction
3) Four (4) misdemeanor convictions
5. In re Hearn, 542 So.2d 901 (Miss. 1989)
Sanction: Removal
Violation of Canons 1, 2, 3; violation of § 117A, willful misconduct
Offense: 1) Ticket fixing
2) Adjudicating criminal defendants not guilty without a hearing or notice to the officer, based on ex parte communications
3) Submitting improperly changed court abstracts to the Mississippi Department of Public Safety
4) Used official capacity and influence to seek favorable consideration by judges of other courts
5) Utilized justice court personnel and supplies to carry out # 1-4
6. In re Bailey, 541 So.2d 1036 (Miss. 1989)
Sanction: Public Reprimand
Misconduct in office
Offense: 1) Jailing litigant for civil debt
2) Interference with orders of another judge
7. In re Inquiry Concerning Baker, 535 So.2d 47 (Miss. 1988)
Sanction: Private Reprimand
Violation of Canons 1, 2A, 2B, 7B(1)(a); violation of § 177A, conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Telephone call to litigant involved in action pending before judge to solicit political support
8. In re Mullen, 530 So.2d 175 (Miss. 1988).
Sanction: Public Reprimand
$500.00 Fine
30-day suspension w/o pay
Violation of § 177A, willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute

*1130 Offense: 1) Attention to docket entry
2) Refused to allow debtor to redeem property
3) Purchase of replevined vehicle by judge and cover-up
9. In re Collins, 524 So.2d 553 (Miss. 1987)
Sanction: Removal
Violation of Canons 1, 2A, 2B, 3A(1), 3B(1), 3B(2); violation of § 177A, willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Used county prisoners for personal work
2) Heard misdemeanor cases "off the record"
3) Failure to report DUI convictions
10. In re Chambliss, 516 So.2d 506 (Miss. 1987)
Sanction: Public Reprimand
Violation of § 117A, willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Intimidate police officers who stopped Chambliss for traffic offenses  attempted to have officers fired
2) Disregard of the law  indicated by failure to acquire new license plate and register in county of residence
3) Interview with rape victim
4) Disregard of judicial process
5) Involvement in bond election
11. In re Hearn, 515 So.2d 1225 (Miss. 1987)
Sanction: Public Reprimand
Violation of Canons 1, 2A, 2B, 3A(1), 3A(3), 3A(4), 3B(1); violation § 177A, willful and persistent failure to perform the duties of office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Found defendants not guilty of traffic violation (no trials)
2) Assessed constable fees to those defendants
3) Allowed JNOV in criminal DUI proceeding after defendant found guilty by jury
4) Interference with orderly assignment of cases
5) Improper conduct in handling bad check cases
12. In re Cooksey, 515 So.2d 957 (Miss. 1987)
Sanction: Public Reprimand
Violation of Canons 1, 2, 3; violation of § 177A, conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Disruption of court proceedings
2) Accusations of impropriety against another judge and wildlife officers
3) Acting on behalf of criminal defendant
4) Other similar offense disposed of by informal commission action and respondent's assurances that conduct would not recur.
13. In re Inquiry Concerning Stewart, 490 So.2d 882 (Miss. 1986)
Sanction: Removal
Violation of Canons 1, 2A, 3A(1), 3A(5), 3B(1); violation of § 177A, willful misconduct in office, willful and persistent failure to perform the duties of the office, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Conversion of money
2) Falsifying court record to cover misconduct
14. In re Inquiry Concerning Garner, 466 So.2d 884 (Miss. 1985)
Sanction: Removal
Violation of Canons 2A, 3A(1), 3A(5), 3B(1); violation of § 177A, willful misconduct in office, willful and persistent failure to perform duties, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Failure to report fines
2) Irregular accounting methods
*1131 15. In re Brown, 458 So.2d 681 (Miss. 1984)
Sanction: Removal
Public Reprimand
$1,400.00 fine
Violation of Canons 1, 2A, 3A, 3B; violation of § 177A, willful misconduct in office, willful and persistent failure to perform duties, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Converting to own use money of civil litigants from 1976 through 1983 in amount of $21,983.00
16. In re [William] Anderson, 451 So.2d 232 (Miss. 1984)
Sanction: Removal
Violation of Canons 2A, 3A(1), 3A(5), 5B(1); violation § 177A, willful misconduct in office, conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Perjury
2) Failure to issue garnishments charging for unissued garnishments
17. In re [William] Anderson, 447 So.2d 1275 (Miss. 1984)
Sanction: Public Reprimand
Violation of unenumerated Canons; violation of § 177A; violation of separation of powers
Offense: 1) Failure to issue writs of garnishment after receiving filing fees
2) Holding job as city policeman while holding office of justice court judge
18. In re Inquiry Concerning a Judge, Jack H. Odom, 444 So.2d 835 (Miss. 1984)
Sanction: Public Reprimand
$250.00 fine
Violation of Canons 1, 2, 3B; violation of § 177A, willful misconduct in office, willful and persistent failure to perform his duties, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Utilized the criminal process to collect "bad checks"
2) Failed to properly docket and process "bad checks"
3) Failed to collect court costs deposited in advance from merchants to whom "bad checks" had been tendered
4) Failed to keep required records
5) Collected court costs from county for cases which were never docketed
19. In re Lambert, 421 So.2d 1023 (Miss. 1982)
Sanction: Public Reprimand
$2,000-00 fine
Violation of several Canons, specifically enumerated Canons 1, 2A, 3B, 5C; violation of § 177A, willful and persistent failure to perform his duties and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Utilized the criminal process to collect civil debts
2) Failed to properly docket and process bad checks
3) Violated statutory provisions of the Mississippi Code respecting the jurisdiction of the justice court
4) Failed to properly collect and account for contributions to the county law library fund
5) Collected fees in excess of the statutory maximum and paid fees in excess of the statutory maximum to court officials
6) Had a pecuniary interest in the outcome of litigation filed in his court
20. In re Branan, 419 So.2d 145 (Miss. 1982)
Sanction: Public Reprimand
$1,000.00 fine
Violation of § 177A, willful and persistent failure to perform the duties of office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Unlawful conduct in procedure used in collecting 286 bad checks from January 1, 1980 to March 11, 1981
21. In re [Lloyd] Anderson, 412 So.2d 743 (Miss. 1982)

*1132 Sanction: Removal
Violation of Canons 1, 2A, 3B(1), 3B(2), 3B(3); violation of § 177A, willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute
Offense: 1) Converting public money to own use
2) Failed to keep accurate entry of each and every sum of public money received
3) Willfully and fraudulently made false entries on monthly report and claim form and certified the same as genuine
NOTES
[1] Julian Ferguson is referred to as Julian "Fergerson" in the Commission's Findings of Fact attached as Appendix "A," infra.