624 So.2d 94 (1993)
MISSISSIPPI JUDICIAL PERFORMANCE COMMISSION
v.
Cecil CANTRELL, Justice Court Judge.
No. 91-CC-0360.
Supreme Court of Mississippi.
September 16, 1993.
*95 Luther T. Brantley, III, Jackson, for petitioner.
Roy O. Parker, Roy O. Parker & Associates, Tupelo, for respondent.
En Banc.
HAWKINS, Chief Justice, for the Court:
This matter is before the Court upon a motion of the Judicial Performance Commission that Cecil Cantrell, Justice Court Judge of Monroe County, be publicly reprimanded. We sustain the motion.
On September 6, 1990, the Commission on Judicial Performance filed a formal complaint against Cantrell based upon two instances of official misconduct.

THE FIRST
The complaint alleged that on November 27, 1988, Cantrell owed a $702.21 hospital bill in Amory. He paid part, leaving a balance of $535.24 owing. On October 16, 1989, the bill remaining unpaid, the hospital turned the account over to a collection agency for collection. On November 7, 1989, when an employee of the collection agency was in Cantrell's office to file collection suits, Cantrell called her into his office, cursed an insurance company for not paying the bill, and told her he would pay it if the insurance company did not, and agreed to pay by the month.
Thereafter, he failed to make any payment on December 1, and on the 15th Cantrell was again contacted by the agency. Cantrell went to the agency, got into an argument over the bill, and told the employee he did not think she could get a judgment against him, she would just have to sue. He later went to the hospital and told an employee she would have to come before him on a speeding ticket some day. He later paid the bill.

THE SECOND
The second allegation charged that Carroll Moffett, a car dealer, went to Cantrell's home on a Saturday afternoon, June 16, 1990, and asked Cantrell to issue an arrest warrant for James M. Martin, Jr., which Cantrell did and called the sheriff. Later that afternoon Martin called Cantrell and told him he had returned the car.
Cantrell told Martin to meet him at Moffett's car lot. On the way to the lot Cantrell delivered the warrant to Amory policeman John Dallas Burks, telling him to come to the car lot, but withhold arresting Martin. At the lot Cantrell talked with Martin and Moffett, and then Cantrell and Moffett went into a back room alone.
Cantrell came back and told Martin he had two choices, pay $650 or he would be arrested. Martin went with Burks to the police station and there gave Moffett a $650 check. On Monday, June 18, Moffett told Martin he had issued a felony warrant for the bad check. On the next day Cantrell told Martin he had done him a favor and if it had not been for him, he (Martin) would have gone to jail. Cantrell told him if settlement was not made with Moffett by 5:00 p.m., he would have to come by his office and make a bond.
The complaint also alleged that the Commission had upon a previous occasion informally resolved a complaint against Cantrell on a matter involving his personal affairs.
Following an answer filed September 13, 1990, generally denying the charges, on January 18, 1991, counsel for the Commission, Cantrell and his counsel filed an agreed *96 statement of facts and proposed recommended sanction.
AGREED FACTS
VI.
On November 27, 1988, the Respondent received medical treatment at Gilmore Memorial Hospital in Amory, Mississippi, for which he was billed $702.21. The Respondent did not pay $535.24 of this debt and on October 16, 1989, Gilmore Memorial Hospital turned the debt over to the Credit Bureau of Monroe County for collection. On October 19, 1989, the Credit Bureau wrote the Respondent, advising him that the debt had been turned over for collection; the Respondent did not respond. The Credit Bureau then called the Respondent.
Respondent admits that he did not pay said account because he believed that it was covered by insurance. Thereafter Respondent went to the hospital and found that he had a $500.00 deductible on his hospital insurance and he paid the money to the hospital at that time.
VII.
On Saturday, June 16, 1990, at approximately 2:30 P.M., one Carroll Moffett appeared ex parte at the Respondent's home requesting the Respondent to issue a warrant for the arrest of James M. Martin, Jr., arising over the sale or trade of a car. The Respondent called Frank Patterson, Sheriff of Monroe County, and discussed the situation with him and subsequently issued a warrant for embezzlement under contract. This warrant was never served on Mr. James Martin, Jr., and he was never arrested. Respondent did not threaten to incarcerate Martin at any time. He was going to have him arrested, but Martin convinced him that he should not have him arrested, with Martin's daughter in the car. Martin then suggested he and Moffett talk about the problem they had between them and try to resolve it and Judge Cantrell, the Respondent herein, told him that he would have nothing to do with that. That whatever they did would be between the two of them. Respondent then had an appointment that he was late for and left and told Martin to go down to the police station and make a bond if it was not settled between the two of them. Moffett wanted to settle the matter and drop the charges and by making this statement Respondent in no way intended to put any pressure on Martin to get him to settle, but felt that if Moffett and he reached a settlement that Moffett would not testify against Martin, therefore the case would probably be retired to the files.
The agreement further stipulated that Cantrell "may be in violation of certain canons of Judicial Conduct of Mississippi," and listed them. It concluded with the following:
PROPOSED RECOMMENDATION
X.
Counsel for the Commission and Counsel for the Respondent hereby propose that, for the conduct as agreed upon and set forth above, the Commission should recommend to the Mississippi Supreme Court that the Respondent be publicly reprimanded by the Mississippi Supreme Court pursuant to Section 177A of the Mississippi Constitution of 1890, as amended, and be assessed the costs of this proceeding.
At the January 28, 1991, proceedings before the Committee designated to hear the complaint, Cantrell and his counsel, and counsel for the Commission appeared, and it was there represented to the Committee that the parties had "determined that a public reprimand would be agreeable," and had filed the stipulation accordingly.
The Committee designated to hear the complaint made its findings of fact and recommendation on January 31, 1991, tracking the stipulation, except it did find Cantrell had violated Canons 1 and 3 of the Code of Judicial Conduct. The Committee then recommended to the Commission that it recommend to this Court that Cantrell be publicly reprimanded pursuant to Section 177A of the Constitution, and assessed with costs.
*97 Following this, the Commission on April 8, 1991, adopted the findings of the Committee and its recommendation, and recommended to this Court that Cantrell be publicly reprimanded.
On May 8, 1991, the Commission filed a motion with this Court for approval of its recommendation, with accompanying brief. On May 17 counsel for Cantrell filed a response, alleging that Cantrell should not be publicly reprimanded, that the local paper had already publicized his conduct, and that the stipulation of facts did not warrant a public censure.

LAW
The allegations of the complaint, if true, would warrant a much more severe sanction than a public reprimand. For whatever reason, counsel for the Commission, Cantrell and his attorney agreed upon a much softer fact stipulation and a public reprimand based upon the stipulated facts. This agreement was taken before the Committee designated to hear the complaint, and with all parties present, they agreed that a public reprimand was the proper sanction. This was then presented to the Commission. Only following the filing with this Court of a motion for its approval did Cantrell and his counsel change their minds and claim that his conduct did not merit a public reprimand.
We do not take kindly Cantrell and his counsel making an agreed written stipulation that a public reprimand was proper, reaffirmed before the Committee hearing the complaint, letting it be filed with the full Commission for approval, and only voicing an objection when the motion to approve the recommended sanction is filed with this Court.
Regrettably, this cause was not considered by the Court in 1991.[1] Had it been filed in 1993 rather than 1991, we would either affirm or remand for a hearing on the allegations of the complaint. As it is, we accept the recommendations of the Commission and order that Cantrell be publicly reprimanded according to statute and the rules of the Commission.
THE MOTION OF THE COMMISSION ON JUDICIAL PERFORMANCE IS HEREBY GRANTED AND CECIL CANTRELL IS HEREBY PUBLICLY REPRIMANDED.
PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written Opinion joined by LEE, P.J. JAMES L. ROBERTS, Jr., J., not participating.
McRAE, Justice, dissenting:
In reaching its determination that Judge Cantrell's "actions" warrant a public reprimand, the majority zeroes in on and adopts the allegations raised in the complaint without any regard for the stipulated facts. The Commission, however, is bound by facts and stipulations. Proven facts, and facts alone, likewise should control our review of this case, not unproven allegations.[1] In any other matter, criminal or civil, justice would never be served by limiting our inquiry to mere allegations. A reading of the majority opinion suggests that justice may not have been served in this case. Instead, it seems that the majority condemns Cantrell for appearing to have a change of heart after agreeing to the Commission's recommended disciplinary actions. However, the Commission can make only recommendations, which we review de novo. We are not bound by them. Accordingly, I dissent.
Based on the stipulated facts, the Judicial Performance Commission found that Cantrell's conduct violated Canons 1, 2 A, 3 A(1) and 3 A(4) of the Code of Judicial Conduct of Mississippi and was prejudicial to the administration of justice. Canon 1 provides that a *98 judge should uphold the integrity and independence of the judiciary. Canons 2 A and 2 B address the requirement that a judge should avoid impropriety and the appearance of impropriety in all his activities. Canon 3 A(1) requires a judge to be faithful to the law and maintain professional competence, while Canon 3 A(4) requires that a judge provide every person with a legal interest in a proceeding the right to be heard and prohibits ex parte communications concerning pending matters.
A closer look at the facts of the case and the applicable law leads me to question whether there is clear and convincing evidence to support the Commission's finding that Judge Cantrell violated the aforementioned canons. Judge Cantrell was charged with two separate and isolated incidents of judicial misconduct, apparently the first in his twelve years as a justice court judge. He contends that the hospital bill incident arose from his mistaken belief that the charges incurred were totally covered by insurance and that the Moffett-Martin incident was an attempt to allow the parties involved "to try to settle their differences between themselves."

A. The Hospital Bill

Judge Cantrell contends that his year-long failure to pay his hospital bill was the result of ignorance or mistake. The Commission alleged also that he made statements both to the credit manager and a hospital employee which intimated that he attempted to use his office for personal gain. Unfortunately for the majority, there are no facts in the record to support these allegations.
As the Commission points out, negligence or ignorance, rather than willful misconduct, are sufficient to constitute behavior that is prejudicial or brings the judicial office into dispute. This Court has stated that:
[A] judge may also, through negligence or ignorance, not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.
In re (William) Anderson, 451 So.2d 232, 234 (Miss. 1984), quoting In re (Lloyd) Anderson, 412 So.2d 743 (Miss. 1982). However, it should be noted that there are no reported Mississippi cases where a judge has been publicly sanctioned for such a comparatively minor breach of judicial propriety.

B. The Moffett-Martin Incident

Judge Cantrell contends that his actions in the dispute between Moffett and Martin over an automobile was an effort to give the parties an opportunity to settle their differences. The Commission asserts that in issuing a warrant for Martin's arrest, although he was not arrested, Judge Cantrell improperly used the threat of criminal process to collect a civil debt. The Commission, however, did not specifically address the issue in its findings or its motion.
Where this Court has affirmed the issuance of public reprimands upon judges charged with using the criminal process to collect a debt, the cases have involved actions far more egregious than Cantrell's. In In re Lambert, 421 So.2d 1023 (Miss. 1982), a Justice Court judge was engaged in collecting "bad checks" with a criminal affidavit attached, entering in them a "red book" separate from his official docket, and issuing criminal warrants. This was part of a larger operation he ran from his chambers, known as Check Services, Inc., wherein he used the information he gathered from collecting bad checks to provide local merchants with a check verification service of sorts. Although the Commission found a total of seven grounds for misconduct, it considered his cooperation with the Commission and willingness to rectify his operations as mitigating factors, and imposed a public reprimand and a fine of $2,000.00. In In re Bailey, 541 So.2d 1036 (Miss. 1989), where a judge jailed a litigant for civil debt, this Court likewise affirmed the imposition of a public reprimand. Judge Cantrell's actions in this case certainly are not of the same magnitude of those found in Lambert or Bailey.

C. The Sanctions

Conveniently sidestepping any analysis of the stipulated facts, the allegations or even the law, the majority reaches the conclusion *99 that "[t]he allegations of the complaint, if true, would warrant a much more severe sanction than a public reprimand." When considering sanctions recommended by the Commission, we afford the Commission great deference, but are not bound by its decisions. Mississippi Judicial Performance Commission v. Hopkins, 590 So.2d 857, 862 (Miss. 1991). The sanctions that may be imposed by this Court include removal from office, a fine or reprimand. Id.; Mississippi Judicial Performance Commission v. Walker, 565 So.2d 1117, 1124 (Miss. 1990). A variety of mitigating factors may be considered when determining whether a public reprimand is an appropriate sanction, including:
the length and character of the judge's public service, any positive contributions made to the courts and community by the judge, the fact that there is no prior judicial precedent on the issue in question, a judge's commitment to fairness and innovative procedural reform, the magnitude of the alleged misconduct, and the number of persons who have been affected by the misconduct, and whether the misconduct involved moral turpitude.
Hopkins, 590 So.2d at 862; see also Walker, 565 So.2d at 1125.
It is undisputed that initially Judge Cantrell and the Commission agreed upon the imposition of a public reprimand. However, considering mitigating factors, as well as our large body of case law on judicial misconduct, the imposition of a public reprimand is an unduly harsh sanction. Turning first to the mitigating factors enumerated in Hopkins and Walker, Judge Cantrell had served as a Justice Court judge for more than twelve years at the time of his hearing before the Commission. The record is silent with regard to any positive contributions he has made to the courts and the community or the extent of his commitment to fairness and innovative procedural form. This is his first offense, and there are no Mississippi cases directly on point. Moral turpitude was not involved, and the magnitude of the offenses is far less grave than any of our reported cases where public reprimands have been imposed. See Walker, Appendix B, 565 So.2d at 1128-1132 (catalogue of Mississippi cases involving judicial misconduct).
This Court has rarely imposed a public reprimand for a first offense. In Bailey, supra, a public reprimand was issued when the first offense involved two incidents: jailing a litigant for twenty-four hours for failing to pay a civil debt and interfering with another judge's case. 541 So.2d at 1039. Likewise in Walker, a public reprimand was issued for a first offense which included separate incidents of willful misconduct involving abuse of the contempt powers. As distinguished from Bailey and Walker, however, Judge Cantrell's actions did not amount to willful misconduct.
The misconduct with which Judge Cantrell has been charged is more in line with those cases where a private reprimand has been issued. In In re Baker, 535 So.2d 47 (Miss. 1988), this Court rejected the Commission's recommendation of a public reprimand to a justice court judge who had telephoned a litigant in a pending justice court case to solicit his vote in an upcoming election. Finding that the impropriety was an isolated incident and considering Baker's lengthy career of public service, we determined that his misconduct warranted only a private reprimand. In Mississippi Judicial Performance Commission v. A Justice Court Judge, 580 So.2d 1259 (Miss. 1991), we considered the Commission's recommendation of the issuance of a public reprimand to a justice court judge who had collected fines on 46 occasions, fixed 74 tickets, failed to sign the criminal dockets in 26 cases, and wrote a series of newspaper columns which presented possible ethical problems. The record revealed extenuating circumstances in the judge's favor: the fines had been collected when the clerk was unavailable, receipts had been issued and all monies were turned over to the clerk; most of the traffic tickets involved students who were first time offenders to whom the judge wished to give a second chance or transients or poor people from whom he could expect no political benefit. The Court noted:
Having studied this record, however, we are persuaded that Respondent's infractions were never intended to be detrimental *100 to law enforcement and judicial fairness, but rather what he at the time thought were fair and common sense dispositions of quite minor offenses. If there was the slightest hint of dishonesty, or attempt to gain political favor in any of these instances, we would be otherwise inclined. This record reveals a justice court judge trying to do a good job, even though there have been these instances of inattentiveness to his responsibility to law enforcement officers. We add that all had been corrected before this matter was ever heard by the Commission.
It will not promote law enforcement for the law to publicly embarrass this judge in the county where he must have respect for his court in order to fulfill his responsibilities.
Id. at 1264.
As in Baker, Judge Cantrell's problem with his hospital bill appears to have been an isolated incident. The bill had been paid in full before the case was heard by the Commission. Likewise, in the Moffett-Martin incident, it is apparent from his statements that Judge Cantrell, as in A Justice Court Judge, was trying to obtain a "fair and good sense" disposition of a minor dispute. Moreover, in twelve years of service, this was Judge Cantrell's first charge brought before the Commission.
The story of Judge Cantrell's misdeeds already has been told on the front page of his hometown newspaper. The issue of a public reprimand serves only to undermine the operations of his court and is inconsistent with other decisions of this Court. While Judge Cantrell's actions are not to be condoned, the punishment should fit the deed. At most, a private reprimand would have been appropriate.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] The record in this case was inadvertently misplaced in the office of a member of the Court, and our checking system in place did not discover the record was missing until May, 1993. The motion was then presented to the entire Court.
[1] It should be noted that when the Commission and the judge whose actions are at issue have entered stipulated findings of fact, our inquiry begins and ends with those facts, not unproven allegations. See e.g. In re R.R. Seal, Justice Court Judge, 585 So.2d 741, 742-744 (Miss. 1991).