555 So.2d 1036 (1990)
MISSISSIPPI JUDICIAL PERFORMANCE COMMISSION
v.
A.J. PEYTON, Justice Court Judge.
No. 89-0827.
Supreme Court of Mississippi.
January 10, 1990.
Luther T. Brantley, III, Jackson, for petitioner.
John S. Holmes, Yazoo City, Thomas E. Royals, Royals Hartung & Davis, Jackson, for respondent.
En Banc.
HAWKINS, Presiding Justice, for the Court:
A.J. Peyton was born in Washington County, and when a young man moved in 1949 to Yazoo City where he was employed as embalmer and mortician at the Century Funeral Home, a business started by his stepfather, T.J. Huddleston. Huddleston was also the grandfather of Mike Espy, who grew up in Yazoo City. The two were very close, Espy writing that Peyton had "raised him."
In 1983 Peyton was elected justice court judge for the southern district in Yazoo County and re-elected in 1987. In 1986 a complaint was filed with the Mississippi Judicial Performance Commission concerning Peyton, but was dismissed without disciplinary proceedings. A commission letter to Peyton did, however, warn him that he should not under any circumstances handle money from fines. The reason for this warning was that some of the individuals who had received tickets would either go by his home or place of business at night or on week ends and ask him what the fine was, and then pay him. It should also be noted that in the 1986 complaint there was no charge that Peyton had not in fact delivered all fine money he received to the justice court clerk.
On January 9, 1989, a complaint was filed by the Commission against Peyton charging the following infractions in office:
1. Collected money from litigants without authority.
2. Failed to sentence convicted DUI defendants and/or defendants convicted of driving while license was suspended in accordance with Miss. Code Ann. § 63-11-20 (Supp. 1988) and § -11-40 (Supp. 1988).
3. Engaged in political activity in violation of the code of judicial conduct.

*1037 4. Accepted blank criminal affidavits and issued warrants based upon them.
5. Sought favorable treatment from another justice court for a person who had received a traffic citation.
Either by stipulation or testimony from Peyton, who was the only person who testified, the record reveals the following facts as to each of these charges:
1. Collecting money without authority.
Upon three occasions in 1986, and upon three occasions in 1988 while Peyton was at the jail, either a deputy sheriff or the jailer would request him to take the money from a cash bail bond the officer had received from some defendant and deliver it to the justice court clerk, which he did. The total of all these cash bonds was $518. There was no question but that Peyton promptly delivered all money he had thus received to the justice court clerk.
2. Failure to impose sentences.
The failure to sentence jail time involved four instances, the dates of which were not given. One was charged with driving while under the influence of intoxicating liquor, and the other three for driving while their licenses were suspended. Peyton responded to this charge by stating that he had intended to place a jail sentence upon each of these and suspend the sentence, but inadvertently the record showed no jail sentence had been imposed. The Commission concedes Peyton had the authority as justice court judge to suspend any jail sentence imposed. Miss. Code Ann. § 99-19-25; c.f. Miss. Code Ann. § 99-27-43; Ch. 491, Laws 1981.
3. The political activity.
For many years prior to his election as justice court judge Peyton had been active in politics and a member and chairman of the Democratic Executive Committee. When he was elected to office in 1983, he did not resign his membership on the committee, but stated that he took a leave of absence when he ran for public office. In 1988, at his own request, he ceased to be a member of the committee. He actively participated in the 1988 Democratic Party caucuses, and was a delegate to the national convention. Peyton attended several political meetings during Espy's race for congress. The local newspaper ran a picture of Espy, Peyton and Gene Triggs and stated that Peyton was one of the county election coordinators for Espy. At the hearing Peyton said the paper was in error, that he had taken no active part in Espy's campaign, but had attended the Congressman's political meetings in Yazoo County. Upon one occasion he had obtained food for one of the meetings.
4. The criminal affidavits.
On September 17, 1988, two men were in custody for burglary. Peyton was called to the sheriff's office to take the affidavits. The affidavits and the warrants issued were in proper form, except there was no charge in either affidavit. The warrant for each of the defendants charged each with burglary of a dwelling house and even listed the code section under which they were charged. Peyton testified this was simple oversight on his part that the charging part of the affidavits had been omitted. There was no claim that any defendant or the state had been prejudiced in any manner by the omissions in these affidavits.
5. Seeking favorable treatment.
In 1985 one Frank Barnes of Greenville received a speeding ticket in Hinds County. Peyton on November 10, 1985, mailed a copy of this ticket to the Hinds County Justice Court and a handwritten note on his office letterhead stationery as follows:
Please help me with this ticket. Thanks. Judge A.J. Peyton.
At the hearing Peyton had no recollection of this matter.
By letters to the Commission, the sheriff, the county attorney and district attorney all attested to the high moral character and dedication of Peyton in carrying out the duties of his office. The sheriff also corroborated the circumstances under which Peyton had received the bail bond money, a practice which he said had been discontinued. At the time of the hearing, the sheriff's *1038 office had a lockbox at the jail to keep such funds until they could be delivered to the justice court clerk.
Based upon the hearing committee's findings and recommendations, the Commission recommended the following:
1. For receiving the fine money, a fine of $1,000.
2. For failing to impose jail sentences in the four cases, a public reprimand.
3. For engaging in political activity, a fine of $1,000 and a public reprimand.
4. For signing the two affidavits without the criminal charge being on either, a public reprimand.
5. For seeking favorable treatment for a person charged with a traffic violation, a private reprimand.

LAW
This Court is deeply appreciative of the dedicated service rendered by the members of the Mississippi Judicial Performance Commission and the judges and citizens called upon to hear complaints. We give great deference to their findings. See, In re (Lloyd) Anderson, 412 So.2d 743 (Miss. 1982); In re Garner, 466 So.2d 884 (Miss. 1985).
This Court is also charged, however, to render independent judgment on our own. In re Collins, 524 So.2d 553 (Miss. 1987); In re Garner, supra.
We note firsthand that none of the charges involve any hint of dishonesty or an attempt to infringe upon either a defendant's rights or the state's responsibility in administering criminal justice. Peyton's otherwise exemplary service in carrying out his duties should not be overlooked in determining the appropriate sanctions to be imposed upon him. See, In re Baker, 535 So.2d 47 (Miss. 1988).
As to charges 1, 2, and 4, we are inclined to accept Peyton's explanation. Of course, as we have stated in In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989), a justice court judge should have no different standard than any other member of the judiciary on matters involving honesty or in which substantial rights of any of the parties before him are involved. For conduct harmful to parties litigant before him or inimical to the dignity of the judiciary, he will not be permitted the luxury of an excuse that he was only a layman. In re Quick, 553 So.2d 522 (Miss. 1989). This being said, neither is it fair in a few isolated and widely scattered cases of procedure, in which no harm whatever was intended or has resulted therefrom, to hold a conscientious lay judge to quite the same technical standard as a law school graduate who has passed the state bar examination. Put another way, if this were a case evidencing a character flaw, an abuse of lawful authority, or some party litigant had been harmed, the discretion we have would not be exercised in his favor. In re Bailey, supra; In re Mullen 530 So.2d 175 (Miss. 1988); In re Collins, 524 So.2d 553 (Miss. 1987); In re Hearn, 515 So.2d 1225 (Miss. 1987); In re Chambliss, 516 So.2d 506 (Miss. 1987).
We should not ignore that Peyton has handled several hundred cases befitting the dignity of his office to the degree that the sheriff and county attorney of his county, and the district attorney all commended him.
While carelessness in some degree in carrying out some of his duties is evident in the 2nd and 4th charges, there was no guile or deceit, or an exaggerated exercise of authority.
Charges 1, 2, and 4 are therefore dismissed.
Peyton's engaging in political activities over an extended period does not present us with some isolated instance. It cannot have escaped him that he was violating the judicial canons by continuing to serve on the county executive committee of the Democratic Party. Without this, his other political activity would justify a private reprimand, but coupled with his activities over several years, he should be publicly censured. See: Canon 7A(1)(a), (b), (c); (2), (4).
As to the final charge, seeking assistance for a person charged with a traffic violation in another court, this being but one *1039 instance which occurred shortly after he was elected to his first term, we agree with the Commission to a private reprimand.
REMANDED TO THE COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., dissents without written opinion.