580 So.2d 1259 (1991)
MISSISSIPPI JUDICIAL PERFORMANCE COMMISSION
v.
A Justice Court Judge.
No. 90-CC-0876.
Supreme Court of Mississippi.
May 3, 1991.
Luther T. Brantley, III, Jackson, for appellant.
Anthony L. Farese, Farese Farese & Farese, Ashland, William R. Fortier, Ripley, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
The Respondent is a justice court judge in a small county in north Mississippi. This case is before us on the recommendation of the Commission that Respondent receive a public reprimand. Because we decide a private reprimand is sufficient in this case, the identity of the Respondent is not disclosed.
A hearing was held May 25-26, 1990. Based on the evidence presented at the hearing, the Commission made several findings:
First, the Commission found that during the period from December 27, 1987, to August 14, 1989, Respondent in his capacity as justice court judge received and accepted money totalling $4,168.75 on 46 occasions, in 55 separate cases. In each instance, he accepted the money as a courtesy and always turned over the money to the justice court clerk and obtained a receipt. There was no allegation that he intended to keep or attempted to keep the money. Respondent had ceased this prior to the filing of the complaint.
*1260 Second, that in 1988, Respondent, in his official capacity as justice court judge, "engaged in the practice of `ticket-fixing'; i.e., finding defendants not guilty based upon the Respondent's ex parte communications with the defendant or other persons, without notice and without a hearing or trial being held, on a non-court date, or other than in open court." The Commission noted 74 cases in which Respondent fixed tickets. Of these 74 cases,
... eight involved a charge of no inspection sticker or an expired sticker wherein a not guilty verdict was entered upon proof a valid inspection sticker had been obtained; 25 involved speeding wherein a not guilty verdict was entered upon a showing that the Defendant was first offender and there were other factors of mitigation, or, alternatively, a not guilty verdict was entered upon proof there was an equipment failure (i.e., broken odometer); 15 cases involved an invalid driver's license wherein a not guilty verdict was entered upon a showing of reinstatement of a valid license; 7 cases involved fish and game violations (either an incorrect license or failure to wear proper hunting colors) wherein a not guilty was entered upon a showing a proper license had been obtained or equipment purchased; two cases involved illegal possession of beer [the county involved is dry] wherein a not guilty was entered upon a showing the defendant was traveling to his/her home county which was a wet county; and finally, there were two cases of improper passing and one case of failure to yield wherein not guilty verdicts were entered without formal court hearing. [Brackets ours]
Third, that during 1988, Respondent, on 26 cases, failed to sign the criminal dockets as required by Miss. Code Ann. § 9-11-11 and § 9-11-13 (1972) (Supp. 1989). When this omission was brought to Respondent's attention, he immediately signed the necessary docket pages and has kept up this practice ever since.
Fourth, that Respondent, while writing a column for an area newspaper, wrote some columns which posed potential ethical problems. The Commission found, however, that the majority of the columns involved legitimate expressions involving the administration of justice and that since Respondent was no longer writing the column that the Commission need not take any further action on the matter.
Finally, the Commission found that Respondent's conduct constituted "willful misconduct in office, willful and persistent failure to perform the duties of his office, and conduct prejudicial to the administration of justice" and that his conduct violated Canons 1, 2A, 2B, 3(A)(1), 3(A)(4), 3(B)(1) and 3(B) of the Mississippi Code of Judicial Conduct.[1]
*1261 The Commission recommended that Respondent be publicly reprimanded pursuant to Section 177A of the Mississippi Constitution and assessed the costs of the appeal to the Supreme Court.
Respondent filed an objection to the Commission's recommendations. In his objection, he argued that his actions did not warrant a public reprimand. He asked for a private reprimand instead. Respondent admitted that he collected money for the justice court clerk on 46 occasions, that he failed to sign the criminal docket on 26 cases, that he had ex parte communications with defendants in 74 cases and that he wrote a newspaper column. He asserted, however, that "no allegation of misconduct involved intentional wrongdoing on his part and the record showed that he always acted in good faith and never intended to bring disrepute upon his office."
This case is now before this Court upon the recommendation of the Commission that Respondent be issued a public reprimand.

COLLECTING FINES
Until 1984 justice court judges had the statutory duty to collect and account for all fines and penalties imposed in their respective court. Miss. Code Ann. §§ 99-1-19 -21 (1972). In 1984 the Legislature created justice court clerks in each county whose duty it is to collect and account for all fines. Miss. Code Ann. §§ 9-11-18 -19 (Supp. 1990); Ch. 502, Laws 1984. Justice court judges no longer have any responsibility or duty to collect fines. The 1984 legislation evinces a clear intent on the part of the Legislature to remove justice court judges from collecting fines.[2]
In Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036 (Miss. 1990), one of the charges against the justice court judge was personally handling fine money on three isolated occasions. We did not in that case make a definitive statement about justice court judges personally handling fine and other monies paid into their courts.
We are constrained in this case to do so.
This Court would be remiss not to acknowledge the function and service rendered by the justice courts in our State. Their service to the judiciary is incalculable. In handling the myriad of petty offenses, *1262 small claims, and domestic disputes, they are the front line, the buffer for all courts. Justice courts are not simply necessary, they are vital components of the judiciary.
We must also recognize that justice courts are by their nature more accessible to, and closer to the people. And, there is nothing wrong with a justice court judge being courteous, polite and helpful in a non-harmful way to his constituents and those who come before him, most of whom come directly and without legal counsel.
What then, is wrong with a justice court judge accepting fine money when the clerk is gone, or during non-office hours?
We cannot say that it is absolutely wrong for a justice court judge to personally accept fine monies, because it is not expressly forbidden by statute. On the other hand, the statutes do not authorize it any more than they authorize a circuit judge to personally receive fine monies in his court, or a chancellor to personally receive public monies in his. There is a clear legislative intent to remove justice court judges from collection of fines. Only the justice court clerk has the statutory authority to collect fines, give receipts for fines, and account for all fine monies paid to the county.
A justice of the peace may have been, but a justice court judge is not in the business of personally handling fine money. He does not keep or maintain records for this purpose. There is also the element of "lead us not into temptation" in the Legislature's removing justice court judges from the responsibility of collecting fines. It is too easy for a judge who is not required by law to receipt for or account for funds to be careless, forgetful, or commingle public money with his own. Then he has a lot more trouble than the possibility of a complaint against him before the Commission.
Finally, there is the public appearance. It is easy for the misdemeanor offender who pays a fine to the justice court judge individually to get it into his head that the judge has a personal interest in the fine money.
It should only be in some isolated and clearly necessitous circumstance that a justice court judge accept fine money himself. And, if he does so, he should at the very first opportunity deliver the money to the justice court clerk and be prepared to explain his reason for accepting the fine money. It goes without saying that he should under no circumstances commingle any fine money with his own.
In this case it should be emphasized that the Respondent gave receipts for the monies, and did in fact turn over all fine monies collected by him to the justice court clerk. There is no suggestion of any dishonesty. Respondent upon these 46 occasions when he accepted the fine money did so when the clerk was gone or unavailable, or during non-office hours at his home, and sincerely thought he was rendering everyone concerned a favor in accepting the fine himself. Also, he immediately ceased collecting any fine money after the justice court clerk advised him against doing so.
This Court therefore makes the following admonition to justice court judges insofar as individually accepting fine monies: Don't.
Just as with a circuit judge or chancellor, it should only be in some isolated and clearly necessitous circumstance that a justice court judge ever undertake the responsibility himself of receiving any fine money. If that extreme occasion arises, he must give a written receipt, keep the money segregated and apart from his own, and at the very first opportunity deliver it to the justice court clerk with an explanation of why he received it himself.

DISMISSAL OF CASES
A more serious matter is presented in Respondent's dismissal of cases upon representations made by the offender and without hearing the State's side of the case.
With the exception of the game law violations, all offenses involved tickets given by highway patrolmen. Four state troopers testified. Two of them stated that they had no problem with Respondent's handling *1263 of their tickets, which represented but a small fraction of the number of tickets they had given returnable to his court. Practically all of the tickets they had issued resulted in pleas of guilty and assessment of fines.
The third officer, when asked if he had any problem with Respondent's dismissal of cases, answered:
A. Well, I do to a degree. Whenever we make a stop, I feel like we're putting our life on the line, and a lot of times when we get back a not guilty verdict, it's just hard to swallow. As far as whatever Judge wants to do with it, it's his business, it's up to him, but to a degree, I don't think it's fair, I sure don't.
The fourth officer was active in filing the complaint against Respondent with the Commission. He strongly objected to Respondent's dismissal of tickets he had given after simply talking with a defendant. There were 17 individuals who had been given tickets by this officer for speeding, improper tag, improper license, and improper equipment.
It is, of course, absolutely correct that a law enforcement officer is not the prosecuting attorney or the judge, and it is not his function to determine or set the punishment in any case in which he is the arresting officer. The overwhelming majority of officers recognize this, and that they would over-step their authority if they sought to fulfill the court's responsibility.
The corollary of this observation is likewise true. A prosecuting attorney and judge have a solemn obligation to uphold the law, and support the law enforcement officers in their effort to enforce the law. The law enforcement officer, the prosecuting attorney and the judge  while each has a different function  are all engaged in a joint enterprise of protecting society and engendering respect for the law.
Nothing can be more demoralizing for any of the three, the judge, the prosecuting attorney or the law enforcement officer, than to get it into his head that one or the other is failing to do his duty. Highway patrolmen especially, who must daily patrol highways where any unguarded moment may result in injury or loss of life, are due the confidence in a prosecuting attorney and judge that when they do bring a law violator before the bar of justice that his case will not be summarily or unfairly dismissed.
By the very nature of the court and the offenses involved, justice court judges and highway patrolmen must have a lot of dealings with one another. Each must have confidence in the integrity and fairness of the other. Respondent most certainly should have recognized that a ticket should not be dismissed without hearing from the officer who issued it. And, at the very least, when he dismissed a ticket, he owed the officer the courtesy of telling him about it, and why he had dismissed it. There is no excuse for Respondent's failure to abide by these simple rules.
There are extenuating circumstances in Respondent's favor. Some of the cases he did not recall. Others he did. In this particular county, when he took office there was a custom or practice of dismissing a ticket for improper tag or license upon a showing that it had been corrected. In other instances he testified the officer was close by when he disposed of the case. In some the offender had several tickets given him by the officer in the same incident, and in those the judge took guilty pleas on one or more tickets and dismissed the rest. Also, he testified that for first-time offenders, especially students, there was a custom or practice of giving them another chance on traffic violations. Between 1,500 and 2,000 cases a year are handled in this county's justice court.
We have carefully studied this record and the explanations given by Respondent and are impressed with his sense of fairness and compassion, while at the same time upholding the law in the overwhelming majority of the cases in his court. Most of the cases in which he exercised leniency involved transients or people of very modest means and circumstances, and in which he could expect no political return or benefit.
*1264 We are also impressed by the county attorney's testimony in Respondent's favor. The county attorney, a native of the county, who had been in office for ten years, testified that Respondent was the best justice court judge he had ever known, and was absolutely fair and impartial to the state and defendants alike. He testified Respondent called him two or three times a week for advice and counsel, and was a conscientious judge.
Respondent is an officer in his local church and in his lodge. He is respected in his county.
No doubt the Commission was impressed by Respondent, because it recommends an admittedly limited sanction of public reprimand. Ordinarily, we would uphold this recommendation without question.
Having studied this record, however, we are persuaded that Respondent's infractions were never intended to be detrimental to law enforcement and judicial fairness, but rather what he at the time thought were fair and common sense dispositions of quite minor offenses. If there was the slightest hint of dishonesty, or attempt to gain political favor in any of these instances, we would be otherwise inclined. This record reveals a justice court judge who is trying to do a good job, even though there have been these instances of inattentiveness to his responsibility to law enforcement officers. We add that all had been corrected before this matter was ever heard by the Commission.
It will not promote law enforcement for the law to publicly embarrass this judge in the county where he must have respect for his court in order to fulfill his responsibility.
The special facts of this case should not give rise to other justice court judges that we might be inclined to leniency in future cases involving similar behavior. This, after all, is a first case, and there will be no excuse for future infractions as evidenced in this case. By no means do we regard Respondent's conduct in reference to dismissing cases outside of trial, and without hearing from the arresting officer as trivial. Indeed, this Court expects this case to serve as a warning that conduct similar to this case will not be treated lightly by us in the future.
Respondent will receive a private reprimand.
RECOMMENDATION OF THE COMMISSION DENIED; OPINION OF THE COURT CONSTITUTES THE PRIVATE REPRIMAND.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Those canons state:

Canon 1
A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Canon 3
A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
... .
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
B. Administrative Responsibilities.
(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.
[2] Miss. Code Ann. § 9-11-19 (1991 Supp.) reads: § 9-11-19. Collection and report of fines and penalties.

(1) It shall be the duty of every clerk of the justice court to receive and account for all fees, costs, fines and penalties charged and collected in the justice court, and, on or before the twenty-fifth day of each month to report in writing under oath, to the clerk of the board of supervisors all such fees, costs, fines and penalties received, including cash bonds and other monies which have been forfeited in criminal cases, since the twentieth day of the preceding month and through the twentieth day of the month in which such report is due, giving the date, amount, and names of persons from whom such monies were received, and to pay so much thereof as shall have been received to the clerk of the board of supervisors for deposit into the general fund of the county. Any clerk of the justice court who shall fail to make such report or to pay the money so received shall, in addition to any other fine or punishment provided by law for such conduct, not be entitled to compensation for the period of time during which such report or money is outstanding. (Emphasis added).
(2) The provisions of this section shall not, except as to cash bonds and other monies which have been forfeited in criminal cases, apply to monies required to be deposited in the justice court clerk clearing account as provided in section 9-11-18, Mississippi Code of 1972.