611 So.2d 849 (1992)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Robert (C.O.) CHINN, Jr., Justice Court Judge.
No. 91-CC-0923.
Supreme Court of Mississippi.
August 5, 1992.
Rehearing Denied January 7, 1993.
Opinion Dissenting to Denial of Rehearing January 7, 1993.
Luther T. Brantley, III, Jackson, for appellant.
Isaac K. Byrd, Jr., Byrd & Associates, Jackson, for appellee.
En Banc.
Opinion of Justice McRae Dissenting to Denial of Rehearing January 7, 1993.
ROY NOBLE LEE, Chief Justice, for the Court:
This proceeding comes to this Court pursuant to findings by the Mississippi Commission on Judicial Performance recommending the removal of Robert (C.O.) Chinn, Jr., Justice Court Judge for the Second District of Madison County. The Commission found that Robert Chinn, Jr.'s conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice, and recommended his removal.

FACTS
Robert (C.O.) Chinn began serving as a justice court judge in Madison County on December 8, 1988. On November 13, 1990, the Mississippi Commission on Judicial Performance filed a formal complaint against Judge Chinn, alleging numerous violations of judicial misconduct. After answers were served denying the allegations, a hearing was had by a committee appointed by the Commission. This hearing was conducted by Judge James Thomas, Judge Billy Ray Mangum, and Mr. Donald Butler, and took place in Jackson on May 30 and 31, 1991.
After hearing testimony from Judge Chinn, Philip Nelson the County Attorney for Madison County, various clerks of Madison County, two highway patrolmen, and a local attorney, the Committee recommended removal from office, or at minimum, a public reprimand and substantial fine. The Committee's harsh recommendation was based on the multiple instances and type of conduct, the consistent disregard for the law, and the judge's lack of candor in the hearing. The Committee found that Judge Chinn had violated Canons 1, 2 A, 2 B, 3 A(1), 3 A(2), 3 A(3), 3 A(4), and 3 B(1) of the Code of Judicial Conduct. Specifically, it found Judge Chinn had engaged in "ticket fixing", in which a charge would be dismissed without going to trial or notifying the officer who had written the violation. This was done with the use of a "consideration docket", wherein a violator would call up the judge and ask for leniency or give an excuse for the judge's consideration. This included *850 eighteen (18) cases in which the judge himself made the motion to dismiss the charges. It was also determined that the judge engaged in ex parte proceedings with defendants whose violations were still pending.
The Committee also found that the judge failed to sentence defendants according to applicable statutes, including several charged with DUI violations. It was found that the judge reduced a DUI violation to reckless driving, and dismissed seven (7) misdemeanor cases without assessing court costs. Judge Chinn also ignored the county attorney's advice in sentencing three defendants, who pled guilty to gambling charges. As a result, the contraband money seized in the arrest was returned to the defendants, rather than forfeited pursuant to statute. It was further shown that Judge Chinn amended three sentences after the defendants had served twenty-eight (28) days in jail. This amendment involved ex parte communication with the father of one of the defendants, as well as the judge writing a letter to another defendant's employer misrepresenting that there were no pending proceedings.
Further, it was found that Judge Chinn attempted to influence other justice court judges to grant favorable treatment in their adjudication of certain cases. The judge exceeded his authority on twenty-seven (27) occasions when he ordered parties to make partial or scheduled payments, often before the statutory appeal period of ten (10) days had elapsed. Finally it was determined that Judge Chinn abused his contempt power when he had Officer Terry McFarland of the Mississippi Highway Patrol arrested for contempt of court. Officer McFarland was later found not guilty, but these charges resulted in filing a civil suit against Judge Chinn, resulting in a default judgment in the amount of $27,566. That default judgment is currently on appeal.
The Commission, headed by William M. Bost, Jr., adopted the findings of the Committee in whole, and recommended that Judge Chinn be removed from office. Pursuant to Rule 10 of the Rules on Judicial Performance, this Court must consider the following:

I. DID JUDGE CHINN'S CONDUCT CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE, THEREBY BRINGING THE JUDICIAL OFFICE INTO DISREPUTE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890?

II. SHOULD JUDGE CHINN BE REMOVED FROM OFFICE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION?
The appropriate standard of review used in a judicial disciplinary proceeding is derived from Rule 10(E) of the Rules of the Mississippi Commission on Judicial Performance, which states:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one (1) recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
Mississippi Judicial Performance Commission v. Hopkins, 590 So.2d 857 (Miss. 1991). Although this Court is not being bound by the Commission's findings, they are given great deference when based on clear and convincing evidence. Mississippi Judicial Performance Commission v. Walker, 565 So.2d 1117, 1119 (Miss. 1990).

DISCUSSION

I. DID JUDGE CHINN'S CONDUCT CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE, THEREBY BRINGING THE JUDICIAL OFFICE INTO DISREPUTE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890?
Section 177A of the Mississippi Constitution allows a judge to be sanctioned for *851 willful misconduct in office. This Court has defined willful misconduct as:
[T]he improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error in judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith... .
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
In re Anderson, 412 So.2d 743, 745 (Miss. 1982).
In order to answer the question of willful misconduct, a careful inspection must be conducted into the alleged violations by Judge Chinn. The allegations are as follows:

1. Ticket Fixing

It is alleged that Judge Chinn engaged in a practice of fixing tickets, thereby dismissing the charges without a hearing on the merits. This practice was carried out with the use of a "consideration docket." Although this "consideration docket" was already in place when Judge Chinn came to the bench, he continued its use. After a citation was issued, an offender could call the justice court office and give some sort of excuse for getting the ticket. If the clerk or, in a few instances, Judge Chinn himself, felt that the case deserved consideration, it would be put on the consideration docket. The consideration docket was mostly comprised of speeding violations and non-moving violations, i.e., expired inspection stickers or license tags. In many instances, one ticketed for an expired license, inspection sticker, or tag, would be able to present proof to the clerk that the violation was corrected, enabling them to be put on the consideration docket. The result would be that the charge would be dismissed without a trial.
Initially the county attorney, Philip Nelson, would make the motion to dismiss before the court. However, Nelson began to feel that the judge was not performing a sufficient inquiry into the circumstances of each "consideration" ticket and voiced his objection to Judge Chinn. After Judge Chinn disregarded Nelson's standing objection, Nelson found himself saying, "you do what you want to do, judge." On 18 occasions, the judge made the motion to dismiss the charges himself, rather than the county attorney initiating the motion. This procedure was confirmed by the county attorney and several court clerks. No trials were ever conducted before the charges were dropped, and it was customary to write "not guilty" on the ticket instead of "dismissed". This led to much confusion because the ticket was labeled "not guilty", giving the appearance that there had been a hearing, when in fact the judge had dismissed the case.
These dismissals caused confusion and problems with highway patrolmen, because they would appear in court unaware that the charges had been dismissed. Other times, they would not be subpoenaed to appear when other charges were being adjudicated or dismissed. The consideration docket was usually "adjudicated" at the end of the regular court session, after everyone had left except the clerk, judge, and the county attorney. In one instance, Highway Patrolman Hillary Davis, Jr. asked Judge Chinn if any more cases were to be heard that day, as Officer Davis was still expecting to testify as to a speeding ticket he had written to a motorist. Judge Chinn told the patrolman that there were no more cases to be heard that day. Upon the trooper's departure, Judge Chinn reconvened the court and dismissed the ticket.
In another instance, a public drunkenness charge against a defendant was dismissed because no intoxilyzer test was given. *852 Apparently Judge Chinn was not cognizant that the use of an intoxilyzer is not required in order to charge one with public drunkenness. Similarly, a local doctor was arrested and charged with DUI, registering .123 on the breathalyzer. This charge was eventually dismissed on the ground of insufficient evidence. The deputy, who administered the breath test, was not available to testify at the trial, since he was on vacation. Prior to the trial, the defense was granted two continuances, and when the county attorney asked for one due to the deputy's absence, his request was denied. Highway Patrolman Terry McFarland testified that several hours prior to the doctor's trial, he had seen the doctor, his attorney, and Judge Chinn all leaving a local attorney's office. Officer McFarland noticed the trio because he was to testify for the State later that afternoon, since it was he who had arrested the doctor. This alleged meeting was denied by Judge Chinn and the doctor's attorney.

Applicable Law
Procedurally speaking, a court cannot dismiss a case on it's own volition. A hearing must be conducted unless the prosecuting attorney moves to dismiss the case. This Court has taken a firm stance on ticket fixing. In the case of In re Hearn, 542 So.2d 901 (Miss. 1989), the Court removed justice court Judge Ralph Hearn from the bench for his continued practice of fixing tickets. Two years earlier, Judge Hearn was publicly reprimanded and fined for engaging in the same conduct. In re Hearn, 515 So.2d 1225 (Miss. 1987). The procedure which Judge Hearn used was exactly the same as that of Judge Chinn. The dismissals were the result of ex parte communications with no hearings being conducted, and the tickets were marked with "not guilty" rather than "dismissed."
Further, Judge Chinn's conduct violates Canon 3 A(1) of the Code of Judicial Conduct which states:
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
Judge Chinn also violated Canon 3 A(4) of the Code of Judicial Conduct which states:
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
This Court realizes that it is difficult not to have ex parte communications because judges do not know the nature of their calls when they answer the phone. However, this problem can be alleviated by using clerks to screen calls, inquiring whether they pertain to a matter presently pending before the court. If so, the call could be directed to the county attorney, thereby avoiding any ex parte communications. For a judge to merely listen to another person involved in pending litigation is a violation Canon 3 A(4).

2. Failure to sentence criminals in accordance with statute

The next alleged violations were that Judge Chinn violated § 63-1-57 of the Mississippi Code (driving with a suspended or revoked license) and § 63-11-40 (DUI) when he did not sentence the violator to the minimum 2 days  6 months in jail, as required by statute. This allegation is a technical one, since the jail time could have been suspended. There were eight (8) instances in which this occurred. Further, there were five (5) violations of § 99-19-25 (authorizing justice court judges to suspend in misdemeanor cases) where the judge suspended fines for DUI's. The statute specifically states that fines for violations of the implied consent laws cannot be suspended. In these cases, the State moved for a $250 fine, $90 court costs, and participation in Mississippi Alcohol Safety Education Program (MASEP). Thereafter, *853 Judge Chinn ordered a $250 fine with $200 suspended. Finally, Judge Chinn is charged with reducing a DUI to a reckless driving charge, resulting in a $250 fine for a motorist as a result of a plea bargain. The maximum fine for reckless driving is $100. Judge Chinn's defense is that he never had read the statutes. He claimed the county attorney was present during all this time, and it was his responsibility to insure that the judge followed the law. He believed that he had the authority to suspend fines, and did so in good faith. He even offered to reimburse the county for the lost fines.

Applicable law
This Court has stated that ignorance of the law is no defense for justice court judges. In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989). Although justice court judges are not required by law to be trained in the law, it is presumed that they are knowledgeable in the area in which they administer justice. The statutes do not allow a judge to reduce a DUI to reckless driving. Although it is often helpful to justice court judges to receive input from county attorneys, it is certainly not the county attorney's responsibility to perform his own duties as well as those of the judge.

3. Dismissal of misdemeanor cases not in accordance with statute

It is alleged that on seven (7) occasions, Judge Chinn dismissed misdemeanor cases without requiring the payment of court costs, pursuant to § 99-15-51 of the Mississippi Code. Since then, this code section has been amended to allow judges discretion in assessing court costs. As above, Judge Chinn admits making these mistakes, but his defense is that he did not read the statute. He also claims that it is moot because of the amendment.

Applicable law
As stated above, ignorance of the law is no defense. In re Bailey, 541 So.2d at 1039. The fact that the law is now changed does not mitigate the fact that there was a violation.

4. Violation of a gambling statute

Three men were charged with shooting dice, in violation of the gambling laws of this state. As a result of their arrests, money was seized and inventoried. The county attorney recommended a $100 fine and forfeiture of the money seized during the arrest. Judge Chinn ignored this advice, fined the defendants $25, and returned the seized money on the theory that it was on their person, rather than on the table.

Applicable law
Section 97-33-17 of the Mississippi Code requires that "all monies exhibited for the purpose of betting or alluring persons to bet at any game, and all monies staked or betted, shall be liable to seizure by any sheriff, constable or police officer ..." The money was clearly contraband and should not have been returned. Had Judge Chinn read the applicable statute, he would have realized that the money was subject to forfeiture. This is another example where Judge Chinn failed to consult the statutes before blindly applying the law according to Chinn rather than dispensing justice, according to the law of the state. The county attorney brought this to the judge's attention, but the judge refused to listen.

5. Amendment of sentence after ex parte communications and false representation to a third party

Three youths were arrested for the burglary of a grocery store. The store was owned by the father of a defendant. The youths were found guilty of trespass less than larceny, and sentenced to six (6) months in the county jail. After they served twenty-eight (28) days, Judge Chinn amended their sentences, thereby releasing and placing them on two (2) years probation. Apparently, one of the youth's father had an ex parte communication with Judge Chinn which resulted in the releases. Judge Chinn did not remember talking with the father. However, when asked about a letter he wrote on one of the youth's behalf, he hesitantly remembered the conversation. Following their release, Judge *854 Chinn wrote a letter to the youth's employer stating that there were no charges pending, and "we still hope he has his job." To further complicate matters, this sentence was amended on a day when the arresting officer was not available, therefore denying him an opportunity to oppose the action.

Applicable law
This ex parte communication was clearly a violation of Canon 2 B of the Rules of Judicial Conduct, which states:
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Judge Chinn had no jurisdiction to change a sentence which a defendant had already begun serving. Also, it was highly unethical for him to misrepresent that no charges were pending. The charges were not dismissed, as reflected by the youth's being on two years probation.

6. Interference with the rotation of cases assigned to other judges and attempt to influence other judges

It is alleged that Judge Chinn violated § 9-11-27 and § 99-33-2 of the Mississippi Code when he tried to influence another justice court judge to give favorable treatment to a defendant. One of the cases involved a hunting violation, in which Judge Chinn, believing the case was his, placed the violation on the "consideration docket." Upon finding out that the case was not his, he asked the other judge to give it "consideration." This allegedly occurred in two other instances involving speeding violations.

Applicable law
The penalty for a judge seeking favorable treatment for a person charged with a traffic violation is a private reprimand. Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036, 1038 (Miss. 1990). However, in Peyton, there was only one incident, and the judge was new in office. In the case sub judice, Judge Chinn has allegedly done this three times over a period of a year and a half. This attempt to influence other judges is also a violation of Canon 2 B of the Rules of Judicial Conduct.

7. Exceeded authority in civil cases/abuse of process

The Commission alleges that on twenty-seven (27) occasions, Judge Chinn ordered a party to pay a judgment in installment payments or partial payments, actually setting up a payment schedule. There were instances when he ordered payment within five (5) days from judgment, thereby not informing nor allowing appeals within the statutory ten (10) day period.

Applicable law
Section 11-51-85 of the Mississippi Code grants a party ten (10) days to appeal a judgment from justice court. Judge Chinn's order requiring payment within the ten day appeal period is in direct violation of the above statute. Although there is no requirement that judges tell the parties about their ability to appeal, most judges deem it a good courtesy, and usually do alert the losing party. If in fact the judge scheduled payments and allowed partial payments, it was clearly outside the realm of his responsibility. His sole duty is to impose the judgment. If the parties cannot get things settled, they could invoke the court's jurisdiction to seek other forms of relief, such as garnishment.

8. Abuse of contempt powers

This allegation revolves around the arrest of Terry McFarland, a Mississippi Highway Patrolman. The facts are undisputed in this case. A complaint had been filed by a highway patrolman alleging that Judge Chinn had been dismissing tickets written by officers. Judge Chinn was not totally sure who had filed the complaint, but he was almost positive that it was Officer McFarland. One day Officer McFarland was in the courthouse, inspecting some of his tickets which he had asked to be pulled, when Judge Chinn approached *855 McFarland and asked "if there is a problem with the tickets." McFarland responded in the negative, but Judge Chinn kept repeating his question. Apparently Officer McFarland had pulled the tickets involving a minor boy, who had been "eaten up with tickets" lately. The boy's father had recently died and he was having a hard time making ends meet. McFarland was there to see about getting the tickets taken care of, since this was a true hardship case. The officer never told the judge why he was looking at the tickets.
After a few minutes, Judge Chinn told McFarland to leave the work area, which was behind the windows where the public pays fines. Several of the clerks testified that it is customary for officers to go in the work area to drop off their tickets or to check on them. While this exchange was taking place, Judge Chinn raised his voice noticeably while the officer remained calm. McFarland told the judge that he would leave the work area when he was finished. Not liking his response, the judge told McFarland that he would hold him in contempt of court if he did not leave. McFarland hesitated briefly, and then left. Upon reaching the sidewalk outside the building, McFarland turned around and re-entered the building, this time staying on the lobby side of the window. McFarland stated that he had a right to be there since it pertained to legitimate business, and proceeded to take off his gun belt, folding it up and placing it on a table in the lobby.
Having seen McFarland's return, Judge Chinn called a clerk into the courtroom, which was not in session at the time, dictated an affidavit and proceeded to hold McFarland in contempt of court. An arrest warrant was issued, and the police were called. A city policeman and a sheriff's deputy responded to the call, and they hesitantly carried out the judge's order. McFarland was booked, and later released on bond. The charges were adjudicated by another justice court judge and McFarland was found not guilty. Officer McFarland later filed a civil suit in federal court against Judge Chinn in which he obtained a $27,566 default judgment. Chinn claims he did not answer the complaint because he was haggling with the board of supervisors on who should defend him. This default judgment is now on appeal. The McFarland incident and default judgment were publicized in the Clarion Ledger on October 25, 1990.
Since this suit was filed against Judge Chinn, Officer McFarland had asked the county attorney to move for the judge to recuse himself from all cases concerning tickets written by McFarland. The county attorney made this motion, but it was denied. Therefore, up until the Committee inquiry, Judge Chinn was still hearing McFarland's cases, and still dismissing the charges. McFarland stated that out of all his tickets that Judge Chinn has adjudicated, very few have resulted in a guilty determination or fine.

Applicable law
This Court has previously addressed the misuse of contempt powers by a justice court judge. In Mississippi Judicial Performance Commission v. Walker, 565 So.2d 1117 (Miss. 1990), Justice Court Judge Walker was issued a public reprimand for holding a party in contempt of court and throwing the party in jail for 24 hours. Evidently, the judge was inflamed by a racial slur which the party muttered upon disposition of the case. In holding that it was an attack on the judge personally and not his office, this Court found that the judge had acted in willful misconduct, prejudicial to the administration of justice, bringing the judicial office into disrepute.
As Judge Thomas of the Committee concluded, Judge Chinn had no authority to hold Officer McFarland in contempt when justice court was not even in session. The fact that Judge Chinn signed both the affidavit and arrest warrant does not appear proper. It looks like a personal vendetta against the officer. As in Walker above, this citation for contempt stems from personal animosity between the individuals, not from acts in relation to the judicial office itself. Judge Chinn's behavior exhibits willful misconduct on the part of a judicial officer, and the subsequent story in the *856 newspaper qualifies as bringing the judicial office into disrepute.

II. SHOULD JUDGE CHINN BE REMOVED FROM OFFICE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION?
Judge Chinn falls in the large number of justice court judges, possessing only a high school education, and with no formal training in the law. However, a lack of legal training is no excuse for not knowing the law, for an adequate knowledge of the law is needed in order to dispense justice effectively. This Court addressed this issue In re Bailey, 541 So.2d 1036 (Miss. 1989) stating:
"[w]hen a person assumes the office of Justice Court Judge in this state, he or she accepts the responsibility of becoming learned in the law. When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any other basis other than the fair and impartial and competent application of law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this Court that our justice court judges be in fact what they are in name: judges." (Citations omitted)
Id. at 1039. Likewise In re Collins, 524 So.2d 553 (Miss. 1987) this Court stated that:
"[Any] claim of ignorance of the duties of his office or negligence in carrying out those duties as a defense to judicial misconduct is tantamount to an admission by an accused judge that he does not possess the qualifications necessary to hold the office to which he has been elected."
Id. at 557. Although Collins involved a county court judge, this same reasoning can be applied to justice court judges, even though most do not have any formal legal training. It seems only logical to impute knowledge of the statutes to judicial officers in a decision making position. In the case sub judice, Judge Chinn should not be able to hide behind his lack of diligence in reading and interpreting the applicable statutes. The statutes concerning justice court are not too voluminous that a judge could not comprehend them, given a reasonable effort.
Sanctions available to the Court include removal from office, suspension, fine and public reprimand, or private reprimand. Some mitigating factors which this Court has used in the decision to impose a public reprimand involve the length and character of the judge's public service, any positive contributions made by the judge to the courts and community, the lack of prior precedent on the issue in question, the judge's commitment to fairness and innovative procedural form, the magnitude of the offense, the number of people affected, and whether the misconduct involved moral turpitude. Mississippi Judicial Performance Commission v. Walker, 565 So.2d 1117, 1125 (Miss. 1990); See also In re Inquiry Concerning Baker, 535 So.2d 47, 54 (Miss. 1988).
When dealing with judicial misconduct, this Court has recognized that the sanction should fit the offense. In re Bailey, 541 So.2d 1036 (Miss. 1989). In the case of In re Quick, 553 So.2d 522 (Miss. 1989), Judge Quick was removed from office for willful misconduct which brought the judicial office into disrepute. The misconduct involved continued ticket fixing to the tune of 552 traffic offenses and 25 DUI offenses over a three year period. In removing Judge Quick, this Court stated:
"Not only has he failed to comply with the law in a handful of cases, but he failed to comply for nearly six hundred cases over a three year period. His defense is basically negligence and ignorance. The statutes, however, are clear. The judge shall have committed misconduct, whether by refusal or neglect, when he fails to comply with any of the requirements of the statutes. It is this misconduct that constitutes grounds for removal."
Id. at 527. See e.g. In re Collins, 524 So.2d at 557. (failure of county court judge to keep adequate records of disposition *857 of cases resulted in removal from office).
In Mississippi Judicial Performance Commission v. A Judge, 580 So.2d 1259 (Miss. 1991), the Court issued a warning to judges who engage in ticket fixing by dismissing the charge without going to trial. Although the Court imposed only a private reprimand, it stated:
"By no means do we regard Respondent's conduct in reference to dismissing cases outside of trial, and without hearing from the arresting officer as trivial. Indeed, this Court expects this case to serve as a warning that conduct similar to this case will not be treated lightly by us in the future."
Id. at 1264. The Court went on further to say that a ticket should not be dismissed without hearing from the officer who issued it. Id. at 1263.
Judge Chinn allegedly "fixed" or dismissed without trial roughly one hundred (100) violations, mostly involving traffic violations during a one and a half year period. These dismissals are not isolated instances, but that of a growing practice.
The continued practice of ticket fixing has led to the removal of justice court judges in the past. In re Hearn, 542 So.2d 901 (Miss. 1989). In one case, a county court judge was removed when it was found that he used county prisoners for personal work, heard more than 100 misdemeanor cases off the record, and failed to report DUI violations. In re Collins, 524 So.2d 553 (Miss. 1987).
It appears obvious that this Court's prior attempts to send a strong message to judges concerning judicial misconduct has fallen on deaf ears. The integrity of the justice court has been dealt another blow by Judge Chinn. "It is this type of behavior that warps citizens' perceptions of justice in our judicial system, and strips the system of credibility and integrity ... it shocks the conscience that [the judge] never looked at the statutes or Code of Judicial Conduct." In re Quick, 553 So.2d at 526.
The abuse of contempt powers alone, exhibit judicial misconduct as measured by the Walker standard. By itself, this violation would warrant a public reprimand. However, when allegations of ticket fixing and attempts to influence other judges are included, it is clearly evident that Judge Chinn has brought the judicial office into disrepute. The totality of Judge Chinn's misconduct shows his unfitness to hold a judicial office.
The Committee noted that Judge Chinn was evasive and non-cooperative in answering the questions at the inquiry. Although justice courts historically handle a great number of cases, it seems odd that Judge Chinn cannot remember events that occurred only one to one and a half years ago.
Judge Chinn has violated almost every ethical canon and rule pertaining to his office. Such flagrant disregard for the law cannot, and will not, be tolerated. Therefore, the recommendation of the Commission on Judicial Performance is accepted and Judge Chinn is hereby removed from office.
JUSTICE COURT JUDGE CHINN REMOVED FROM OFFICE.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and McRAE, JJ., concur.
DAN M. LEE, P.J., and PITTMAN and BANKS, JJ., not participating.

ON PETITION FOR REHEARING
Petition for rehearing denied.
McRAE, J., dissents to denial of petition for rehearing with separate written opinion.
DAN M. LEE, P.J., and PITTMAN and BANKS, JJ., not participating.
ROBERTS and SMITH, JJ., not participating according to Supreme Court Internal Rules.
McRAE, Justice, dissenting from Denial of petition for rehearing:
Robert Chinn takes this Court to task in his Petition for Rehearing for blindly accepting the recommendation of the Judicial *858 Performance Commission without giving due regard to our precedents in similar cases and the actual facts in this case. Believing that this Court's original opinion is founded on the flawed findings of a flawed institution, I dissent from the majority's decision to deny Chinn's Petition for Rehearing.
Upon reviewing the record in light of past cases involving complaints before the Judicial Performance Commission, it becomes readily apparent that Robert Chinn, a black Justice Court judge, has received a penalty grossly disproportionate to any we have previously imposed for similar misconduct. The majority has accepted the Commission's recommendation that Chinn be removed from office. This represents a sharp departure from past decisions wherein we have customarily given a warning reprimand to "first time offenders" who have committed acts like those of which Chinn stands accused. See, e.g., Mississippi Judicial Performance Commission v. A Justice Court Judge, 580 So.2d 1259, 1264 (Miss. 1991) (imposing private reprimand in what this Court noted "after all, is a first case"); In re Bailey, 541 So.2d 1036, 1037 (Miss. 1989) (imposing "less than capital sanction" for first offense); In re Hearn, 515 So.2d 1225 (Miss. 1987).
Chinn's banishment from the bench appears even more irregular when compared to cases where we have imposed lesser sanctions upon judges who commit far more egregious transgressions. Perhaps the most notable example is the recent case of In re Maples, 611 So.2d 211 (Miss. 1992). That case began with a 1981 investigation of former Circuit Judge Darwin Maples in which Maples was accused of numerous irregularities in the release of convicted criminal defendants. The Judicial Performance Commission found that Maples had released several convicted criminals following the imposition of sentence, the expiration of the term of court, and after the beginning of service of prison terms. The releases included persons whose convictions and sentences had been affirmed by this Court as well as persons sentenced by judges other than Maples. Upon being apprised of the findings by a letter from the Commission issuing a private reprimand dated November 23, 1981, Maples executed a statement acknowledging his errors and certifying that he would "comply with the provisions of this letter of agreement so long as I hold the office of Circuit Judge." Maples soon returned to his old ways, however, and continued the practice until a formal complaint was filed early in 1991. The formal complaint filed against Maples accused him not only of improperly releasing or altering the sentences of seventeen more prisoners, but also of entering orders relative to the housing and custody of criminal defendants without notice or authority and of expunging the records of criminal defendants without notice or authority. The complaint also charged Maples with staying or setting aside judgments nisi and final judgments in bail bond cases, including judgments entered by other judges, without notice or authority  conduct which resulted in bonding companies not paying hundreds of thousands of dollars in judgments against them, to the detriment of Jackson County, Mississippi. The Judicial Performance Commission at first recommended a private reprimand since Maples had been admonished ten years before and had stated he would never do this again.
In comparing the Maples case to the case sub judice, one should note that Maples engaged in conduct which constituted possible criminal wrongdoing. Criminal charges, in fact, had been filed against him but later were dismissed by the newly-elected district attorney without trial.
Maples admitted the five formal charges against him. The charges, which were involved in more than fifty-eight cases, follow:
(1) Violation of the Supreme Court mandate in Denton v. Maples, 394 So.2d 895 (Miss. 1981), by improperly releasing, suspending or altering the sentences of criminal defendants in seventeen cases, after certifying to the Commission previously that he would comply with the letter of agreement signed by him on November 30, 1981, thereby violating Canons 1, 2A, 2B, 3A(1), 3A(4), and 3B(1) of *859 the Code of Judicial Conduct of Mississippi Judges.
(2) Entering orders relating to the housing and custody of criminal defendants, without notice or authority, in violation of Miss. Code Ann. § 47-5-110 (Supp. 1990) and Miss. Code Ann. § 99-37-19 (Supp. 1990), Lewis v. State, 414 So.2d 437 [435] (Miss. 1982) and Canons 1, 2A, 2B, 3A(1), 3A(4) and 3B(1) of the Code of Judicial Conduct of Mississippi Judges.
(3) Ordering records of criminal defendants to be expunged without notice or authority, in violation of Canons 1, 2A, 2B, 3A(1), 3A(4) and 3B(1) of the Code of Judicial Conduct of Mississippi Judges.
(4) Setting aside judgments nisi and final judgments in bail bond cases, including judges entered by other judges, without notice or authority, resulting in bonding companies not paying judgments against them to the detriment of Jackson County, Mississippi, in violation of Canons 1, 2A, 2B, 3A(1), 3A(4) and 3B(1) of the Code of Judicial Conduct of Mississippi Judges.
(5) Violation of Section 177A of the Mississippi Constitution of 1890, as amended, by willful misconduct in office and conduct prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Chinn's misbehavior, while subjecting him in some instances to possible civil liability, does not even approach the bounds of criminal liability. Further, Maples committed the acts condemned in the 1991 complaint after being scolded for similar conduct a decade earlier. In contrast, the case sub judice represents Chinn's first encounter with the Judicial Performance Commission. In addition, it is important to remember that Chinn is a mere justice court judge, while Maples was a seasoned member of the circuit court bench. Given this comparison, one would assume that since the Commission recommended that Chinn be removed from the bench, Maples would have received an equally harsh recommendation. Not so. Instead, the Commission recommended that Maples be privately reprimanded. After this recommendation was rejected by this Court, the Judicial Performance Commission then finally recommended a public opening of the record and in effect a public reprimand. The two recommendations cannot possibly be reconciled.
Further, in the case of Mississippi Judicial Performance Commission v. A Justice Court Judge, 580 So.2d 1259 (Miss. 1991), we issued a private reprimand to a Justice Court Judge who was involved with seventy-four cases in which he "fixed" tickets, eight involving charges of no inspection sticker, twenty-five speeding tickets, fifteen involving invalid drivers' licenses, seven involving fish and game violations, two involving illegal possession of beer, and various other violations. Further, he accepted as a courtesy $4,168.75 over forty-eight occasions, money from defendants in violation of various canons, but turned the money over to the court clerk. Further, he failed to sign the criminal dockets as required by Miss. Code Ann. §§ 9-11-11 and 9-11-13 (Supp. 1989). However, in that case, we admonished him only on a private reprimand.
In the case of In re: Hearn, 515 So.2d 1225 (Miss. 1987) a justice court judge was given not only one, but a second, "bite at the apple" when he was issued a public reprimand in 1987 and fined $250.00 for judicial misconduct. In approximately ninety-three instances, he had found defendants not guilty without conducting a trial or notifying the arresting officer. Id. at 1227. In addition, he had ex parte communication with the defendants, interfered with the orderly assignment of cases, and had engaged in improper conduct in handling of criminal bad check cases. Judge Hearn continued his established course of misconduct without abatement, and was later charged with the same violations. He was finally removed from the bench, approximately two years later after another hearing.
Chinn's petition for rehearing took the Court to task because we accepted blindly the facts and charges by the Judicial Performance Commission, which, in many instances, were incorrect. The petition attempted *860 to show that there were less factual findings which were correct, than what we originally stated in our opinion, and that the charges were summarily reduced drastically from the original charge of the formal complaint filed. A review of those facts and number of cases shows that far less was done by Chinn than what was done by Hearn.
Even if the discipline recommended by the Commission for Chinn were not so facially incongruous with our precedents, I would still fault the majority for paying such uncritical deference to the Commission's findings and conclusions. Unfortunately, a respondent appearing before our Judicial Performance Commission receives less due process than did parties who appeared during the Spanish Inquisition or before the infamous Star Chamber. First, the system, as presently constituted, places far too much power in the hands of the Executive Director. Under Rule 3(F) of the Rules of the Mississippi Commission on Judicial Performance, the Executive Director's
duties and responsibilities ... include the authority to:
(1) Represent the Commission as counsel in formal proceedings and in other proceedings, upon the direction of the Commission.
(2) Receive information from any proper source, including allegations and complaints;
(3) Prepare the Commission's budget for its approval and administer its funds;
(4) Make preliminary evaluations;
(5) Screen complaints and make recommendations to the Commission;
(6) Conduct and/or supervise investigations as directed by the Commission;
(7) Maintain and preserve in confidentiality the Commission's records, including all complaints, files and written dispositions;
(8) Maintain statistics concerning the operations of the Commission and make them available to the Commission and to the Supreme Court;
(9) Recommend employment and supervise other members of the Commission's staff;
(10) Prepare an annual report of the Commission's activities; and
(11) Employ, upon the direction of the Commission, special counsel, private investigators or other experts as necessary to investigate and process matters before the Commission and before the Supreme Court.
As a practical matter, the Executive Director acts as prosecutor before the Commission. Yet despite his adversarial role, he sets up the meetings and agenda of the Commission, decides which facts the Commission should consider, and "approves and administers" the Commission's funds. To make matters worse, he sits in on meetings when the Commission makes decisions, which is analogous to having a prosecutor sit in on a jury's deliberations. The Executive Director also acts as "court clerk" by issuing and signing all subpoenas.
The second shortcoming of the Commission concerns its purported role as a factfinder. Stated simply, the alleged factfinder finds no facts. Under Section 177A of our state constitution, the Commission is composed of seven members. Pursuant to the Rules of the Commission, however, cases are heard before a three-member panel, including alternate members who generally have no voting privilege. The panel deliberates, and makes a recommendation to the entire seven-member body. Under this scheme, a majority of the Commission never sees a witness, never hears any testimony, and relies totally on the recommendation of a minority when deciding the professional fate of a respondent. Thus organized, the Commission is no more equipped to find facts than is an appellate court.
The third shortcoming is perhaps the most significant and far-reaching. The entire Judicial Performance Commission system, never having been approved by the United States Department of Justice as required by Section 4 of the Voting Rights Act of 1965, may well be illegal under federal law. Section 4 of the Voting *861 Rights Act, codified at 42 U.S.C. § 1973b, requires Justice Department approval prior to the implementation of any state-enacted laws or rules which affect the right or ability of persons to seek or hold elective office. See City of Rome v. United States, 446 U.S. 156, 160-61, 100 S.Ct. 1548, 1553-54, 64 L.Ed.2d 119 (1980); Dougherty County Board of Education v. White, 439 U.S. 32, 99 S.Ct. 368, 58 L.Ed.2d 269 (1978). According to 28 C.F.R. § 51.13(g), the Act applies to "[a]ny change affecting the eligibility of persons ... to become or remain holders of elective offices." (Emphasis added). Since Miss. Const. § 177A directly affects the right of elected judicial officials to "remain holders of elective offices," it is clear that § 177A and all related statutes and rules are subject to the requirements of the Voting Rights Act of 1965.
The Mississippi legislature and the State Attorney General acknowledged in 1990 that such changes are subject to § 5 pre-clearance and must be submitted for approval pursuant to chapter 426, S.B. 2416 which amended Miss. Code Ann. § 9-19-13 (19724). See Editor's Note to § 9-19-13. The mere submission of this limited amendment does not suffice to preclear § 177A or the implementing statutes or rules. Clark v. Roemer, ___ U.S. ___, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991); McCain v. Lybrand, 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1984). In Clark, the Supreme Court admonished that "the preclearance procedure mandated by Section 5 ... focus[es] entirely on changes in election practices" and that "submission of a particular change does not encompass all prior changes  precleared or not  that have been made since" November 1, 1964. The Court made crystal clear that the submitting state must submit and specifically identify the charges to be precleared.
Miss. Const. § 177A and the implementing statutes and rules, with the exception of § 9-19-13, have not been submitted for preclearance. Clark instructs that:
[s]ection 5 requires States to obtain either judicial or administrative preclearance before implementing a voting change. A voting change in a covered jurisdiction "will not be effective as a la[w] until and unless cleared" pursuant to one of these two methods. Connor v. Walker 421 U.S. 656 [95 S.Ct. 2003, 44 L.Ed.2d 486] (1975) (per curiam). See also United States v. Board of Supervisors of Warren County, 429 U.S. 642, 645 [97 S.Ct. 833, 834, 51 L.Ed.2d 106] (1977) ("No new voting practice or procedure may be enforced unless the State or political subdivision has succeeded in its declaratory judgment action or the Attorney General has declined to object"). Failure to obtain either judicial or administrative pre-clearance "renders the change unenforceable." Hathorn v. Lovorn, 457 U.S. 255, 269 [102 S.Ct. 2421, 2430, 72 L.Ed.2d 824] (1982). If voting changes subject to § 5 have not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting the State from implementing the changes. Allen v. State Bd. of Elections, 393 U.S. 544, 572 [89 S.Ct. 817, 835, 22 L.Ed.2d 1] (1969).
Clark, ___ U.S. at ___, 111 S.Ct. at 2101.
In Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, the U.S. Supreme Court held:
Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.
Further, persons who are brought before a body exercising such "usurped authority" are entitled to injunctive and monetary relief under 42 U.S.C. § 1983.
Having never been cleared by the United States Justice Department, Mississippi's Judicial Performance Commission is a body having no authority to act. As such, this Court errs in deferring to its findings and recommendations.
In summary, it is clear to me that the punishment imposed upon respondent Chinn cannot be reasonably reconciled with the more lenient treatment this Court has afforded other respondents. Further, this Court's reliance on the findings of the Judicial Performance Commission is entirely misplaced since under federal law, the *862 Commission has no authority to affect the tenure of elected judicial officials. Moreover, even if the federal preclearance requirements were satisfied, the system under which the Commission operates does not adequately guarantee fair consideration of the cases which come before it. This is not to say that certain individual commissioners have not done outstanding work with the Commission. The system itself, however, to put it bluntly, smells.
Respondent Chinn, without doubt, has engaged in sanctionable behavior. In light of our precedents, however, I believe that a public reprimand would adequately chastise Chinn for his misdeeds.
I therefore dissent from the majority's decision to remove Chinn from the Bench.